Patricia A. KELLY, Plaintiff,

v.

David MATTHEWS, Secretary of Health, Education and Welfare, Defendant.

No. C–C–76–002.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Sept. 23, 1976.

---

George L. Fitzgerald, Charlotte, N. C., for plaintiff.

Douglas M. Martin, Asst. U. S. Atty., Charlotte, N. C., for defendant.

## ORDER

McMILLAN, District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking review of the Administrative Law Judge's finding that she failed to establish that for the pertinent period she has been and is "disabled" within the meaning of 42 U.S.C. §§ 416(i) and 423(d)(1) so as to entitle her to receive Social Security Disability Insurance benefits. Both parties move for summary judgment.

No disability insurance application may be granted more than twelve months after the *termination* of the period of disability, 42 U.S.C. § 416(i)(1)(E). Since Ms. Kelly filed her claim for disability insurance benefits on January 28, 1974, she must show that the period of her disability lasted until January, 1973. The "period of disability" lasts two months after the disability ceases, 42 U.S.C. § 416(i)(1)(D)(ii). In order to show her period of disability lasted until January, 1973, Ms. Kelly must show that her disability in fact continued until two months prior to that, or November, 1972.

All parties agree that plaintiff was last eligible to receive Social Security Disability Insurance benefits on March 31, 1957. Thus, in order for Ms. Kelly to be entitled to receive disability benefits, she must show that she was continually disabled from March 31, 1957, until November 1, 1972.

The Administrative Law Judge found that Ms. Kelly failed to establish this requisite disability. On review of the record as a whole, I find that this finding is not supported by substantial evidence and reverse the decision of the Appeals Council affirming it.

In order to show that she was "disabled," Ms. Kelly must show that she was unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1)(A). The uncontradicted evidence at the hearing showed the following:

1. Plaintiff quit high school during the tenth grade in 1951 at age fifteen. The reason she quit was that she had changed schools, felt unable to make new friends, and became very depressed spending much of her school time hiding in the bathroom. (Testimony of Ms. Kelly, and her parents, Edith and Brice Horton.)

2. After quitting high school Ms. Kelly went to work as a sales girl in a jewelry store but was forced to quit in 1955 due to severe depression, weight loss, anxiety, insomnia, anorexia, vomiting, and incessant crying. (Exhibit 19; Discharge note, Charlotte Memorial Hospital.) At this time Ms. Kelly showed severe suicidal tendencies and was hospitalized for approximately two weeks. (Exhibit 19; testimony of Edith and Brice Horton.)

It is not contested that in 1955, Ms. Kelly (then Ms. Horton) was disabled within the meaning of the Social Security Act. The job as a sales girl is the only employment Ms. Kelly has ever had for any substantial length of time.

3. In 1955 Ms. Kelly married Oscar Kelly. She had three children, born in 1956, 1959, and 1963. (Tr. 41.)

4. The witnesses are unsure when Ms. Kelly saw psychiatrists or was hospitalized between 1955 and 1966. The Administrative Law Judge concluded that the reason that the witnesses could not remember these dates is that there was no treatment during this time. However, all of the evidence in the record is directly contrary to this finding. Ms. Kelly's mother testified that she is sure there were psychiatrists between 1955 and 1966 but that she cannot remember their names.

"Q. I see. Now, who was the next psychiatrist she went to after Dr. Holbrook. Can you give me any idea?

A. I just don't know who was the next one. In fact, I really don't remember the names.

Q. Back in 1966, Dr. Harvey Meade put your daughter in the hospital.

A. Harvey Meade. Uh-huh.

Q. In the hospital.

A. Yes, I remember Harvey Meade.

Q. Do you reckon he was the 2nd one, or were there in between Dr. Holbrook and Dr. Meade?

A. That was in '56? That must have been the next Harvey Meade.

Q. No, it was 1966.

A. '66. Oh, no, that surely wasn't the next one.

Q. Uh-huh.

A. I believe she saw—I don't—But she would go to one psychiatrist and she'd say, 'Mother, he's not doing me any good.'

Q. Uh-huh.

A. She just—Then she would try another one. (Tr. 64–65.)

Similarly, Ms. Kelly's sister, Norma Dotson, testified that Ms. Kelly has been in and out of hospitals since 1955 (Tr. 74). Brice Horton testified that while he did not know when Ms. Kelly was in the hospital after 1955, he knew she was on medication a long time after that (Tr. 78–79). Oscar Kelly testified that Ms. Kelly was in Charlotte Memorial Hospital after their first child was born in 1957, and that she was admitted to Broughton Hospital in 1958 (Tr. 86–87). He testified further that she has been on heavy medication ever since 1957 (Tr. 85).

5. While Ms. Kelly's relatives are not sure of the dates of medical treatment, they are sure that Ms. Kelly's condition never improved after 1955 except, perhaps, for very short periods of time. Her mother testified at great length about Ms. Kelly's dependence on her through the years. It was necessary for Ms. Horton to help Ms. Kelly do her simple housework and take care of the children. Ms. Kelly was afraid to be far away from Ms. Horton.

"Then she rented a house close by. And after that, while she was living in this house, her second son was born. That was Mark. But, during all this time, I had to be with her just like she was single. I just had to watch after her and watch after her children, and I have all the time. She really had those children, but she's told me that she didn't love those children, that she couldn't get close to those children." (Tr. 57–58.)

Ms. Dotson corroborated the testimony that Ms. Kelly's condition never really improved. After describing an incident that happened in 1955 she said:

"Then once I remembered she went out into the woods and she just stood there and she just screamed just as loud as she could scream, I guess for 5 minutes; then came back in the house and she went to bed, else another crying spell for several days.

"And this, this went on till, as far as I can remember, it's been going on ever since. She's been in and out of hospitals" (Tr. 70).

Ms. Dotson also testified about Ms. Kelly's inability to do her housework and take care of her children and Ms. Dotson's efforts to help out the best she could (Tr. 71). Mr. Horton testified that Ms. Horton had to be with Ms. Kelly every day after she got married to help with the housework and that it has been the same ever since (Tr. 77). Mr. Kelly testified that Ms. Kelly has been incapable of getting close to anyone, and that someone has had to be with Ms. Kelly most of the time throughout the years.

"And from '57 on, it's been just, just nip and tuck just the same thing. It's heavy medication, just someone to be with her most of the time. She don't even drive a car very much unless someone's with her" (Tr. 84–85).

6. There is no evidence in the record that indicates that Ms. Kelly's condition improved at any time between 1955 and 1966.

7. There may have been some periods between 1955 and 1966 during which Ms. Kelly was not under professional care. In light of the testimony given at the hearing, this fact is more logically indicative of the fact that Mr. Kelly could not afford continuous private psychiatric care for Ms. Kelly (see testimony of Oscar Kelly at Tr. 86) than that Ms. Kelly did not need the care.

8. It is not contested that in 1966 Ms. Kelly had a severe breakdown and was "disabled" within the meaning of the Social Security Act at all times between 1966 and November 1, 1972. She was in and out of hospitals and has seen many doctors between those dates, and, at the time of the hearing, was undergoing treatment at the Mecklenburg County Mental Health Center.

9. A noted psychiatrist, Dr. W. D. Holbrook, reported:

"It is felt that this patient suffers from a chronic depression. She has extremely poor self concept and, therefore, sees herself incapable of dealing with other people as an equal. She is, therefore, in my

opinion, incapacitated for other than household chores and inasmuch as this has been true since 1955 (which is prior to December 31, 1957), it is not apt to change in the near future." (Tr. 158.)

He based his opinion on his 1955 treatment of Ms. Kelly, his 1974 examination of her, and his conversations with family members.

This evidence establishes a strong case that Ms. Kelly was unable to maintain employment at her previous occupation of saleswoman or at any other substantial gainful public employment at all times between March 31, 1957, and November 1, 1972.

 Before making a finding of the claimant's ability or inability to engage in any substantial gainful employment, the Administrative Law Judge must examine four kinds of evidence: (1) objective medical facts; (2) medical opinions of the physicians that have made these clinical findings; (3) subjective evidence from the claimant and his or her relatives; and (4) the claimant's background, work history and present age. *Hicks v. Gardner,* 393 F.2d 299, 302 (4th Cir. 1968); *Wyatt v. Weinberger,* 519 F.2d 1285 (4th Cir. 1975). This does not mean that there must be all four kinds of evidence to support a finding of disability. See, for example, *Combs v. Weinberger,* 501 F.2d 1361 (4th Cir. 1974). The Administrative Law Judge found determinative the fact that there was no *medical* evidence between 1955 and 1966. However the subjective evidence of the claimant and her relatives is to be given great weight, especially when such evidence is uncontradicted in the record. *Combs v. Weinberger, supra,* at 1362. In *Wyatt v. Weinberger, supra,* the Fourth Circuit found that the testimony of the claimant and her husband that claimant's nervousness disabled her established a *prima facie* case of disability despite the fact that the only medical testimony was that the nervousness "probably" disabled her, in a case in which the record showed past medical treatment for the condition and a report of a psychiatrist consistent with the subjective evidence. Here, as in

that case, there is uncontroverted subjective evidence of inability to maintain substantial gainful employment, consistent medical testimony, and a record of past and present treatment.

 Although the Administrative Law Judge's findings of fact must be followed if supported by substantial evidence viewing the record as a whole, in this case neither his finding that there was no treatment between 1955 and 1966 nor his decision to discredit the letter of Dr. Holbrook can be upheld. All of the testimony was to the effect that there was treatment during that period, and there was no indication in the record that the Administrative Law Judge did not find Ms. Kelly's relatives to be credible witnesses. As a matter of fact, during the hearing he sympathized with their inability to remember specific details over a twenty-year time span.

 In addition, the assumption that medical care was sporadic during the period between 1955 and 1966 does not support the inference that medical care was not needed, in light of the testimony that claimant could not afford continuous treatment.

Similarly, there was no challenge to Dr. Holbrook's professional capability. Experts are entitled to draw conclusions from observations before and after about what probably happened in between. In a case when there is no evidence anywhere in the record contrary to the medical conclusion, the opinion should not be totally ignored.

 Ms. Kelly's evidence shows that she was clearly "disabled" in 1955 and has been since 1966; the testimony of her mother, father, sister, and husband, who all agree, show that her condition never improved between 1955 and 1966; and the conclusion of the psychiatrist shows that she is chronically depressed and has been disabled for other than household chores since 1955. This evidence establishes a *prima facie* case for Ms. Kelly. At this point the burden of proof shifts to the Secretary to establish (1) that the claimant, given her age, education, and work experience, had the capacity on the dates in question to

perform a specific job, and (2) that that job existed in the national economy at the time in question. *Taylor v. Weinberger,* 512 F.2d 664 (4th Cir. 1975).

 There is no evidence in the record to support either of those findings. Therefore, on the present record the denial of disability insurance benefits cannot stand.

IT IS, THEREFORE, ORDERED:

1. That the Secretary's motion for summary judgment is denied.

2. That Ms. Kelly's motion for summary judgment is granted.

3. That the opinion of the Appeals Council affirming the opinion of the Administrative Law Judge is reversed.

4. That this case is remanded to the Administrative Law Judge for entry of a decision not inconsistent with this order.