In the Matter of ANONYMOUS, Respondent, *v.* ANONYMOUS, Appellant.

Second Department, April 25, 1966.

*Bernard Gore* (*Sidney B. Schatkin* and *Max Tacouni* of counsel), for appellant.

*Freedman, Weisbein & Furlong* (*Richard D. Furlong* of counsel), for respondent.

HILL, J.  Respondent has been married three times.  She had four children by her first husband, with whom she lived until the first part of June, 1951, when she left him to live with appellant.  In the late Summer of 1951 she became pregnant with child.  She testified that appellant took her to an abortionist, as a result of which she hemorrhaged severely.  Not being able to convince appellant in a telephone conversation of the seriousness of her condition, she sought advice from her first husband, who called appellant, with the result that appellant took her to a hospital for treatment, where the child's life was saved.

Respondent returned to her first husband's apartment late in November with appellant's consent.  Appellant wrote a letter dated November 6, 1951 to respondent, closing with the words: "I love you and our baby."  The first husband found this letter and left respondent.

Appellant and respondent thereafter continued their liaison.  The child was born on April 11, 1952 in a hospital where appellant visited her and to which he sent her a telegram and Easter card.

Thereafter appellant and respondent lived together in various places attested to by photographs offered in evidence showing the parties and the child together.  They married as soon as they were legally free to do so in October, 1956.  In the year 1957 appellant abandoned respondent.

Respondent's first husband testified that he had no sexual relations with respondent after April, 1951, that she left him to go with appellant on June 1, 1951 and that he did not see her again until the Fall of that year.  He did not pay her bill when she went to the hospital at the time of the attempted abortion and when the child was born.  He has always denied paternity.

Respondent's third husband testified that when he was about to marry her, appellant told him that her morals were bad and also admitted being the father of the child.  While respondent was living with her third husband, appellant visited the child and at one time took her on a four-day vacation and at another time for a week end.

At the trial, appellant denied paternity but admitted having written the letter to respondent referring to "our baby"; however, he explained that this was to consolidate his relationship with respondent. He also admitted being called to the first husband's apartment, where he found respondent hemorrhaging badly, and thereafter taking her to the Flushing Hospital.

Respondent gave her first husband's surname for entry purpose on the child's birth certificate; and in a Family Court proceeding the first husband signed a consent decree to support his children, one of them being this child. Respondent's explanation is that the Department of Welfare [of the City of New York] had demanded that she seek support from him for this child.

Appellant argues that legitimacy will be presumed even though the wife harbors an adulterer (*Matter of Findlay*, 253 N. Y. 1). He also argues that it is the legal status of the child that is involved and, therefore, no judgment decreeing him to be the father of the child can be entered without first having a guardian appointed to represent the child (*Matter of Cardona*, 197 Misc. 509).

To deal with the last contentions, it was said in *Commissioner of Public Welfare* v. *Koehler* (284 N. Y. 260, 266–267): "Paternity proceedings are brought to enforce a statutory duty imposed upon the father of a natural child to whom the father at common law owed no duty. * * * Such a proceeding may be brought by the mother or if the child ' is or is likely to become a public charge ' by a public official. * * * The child is not a necessary party to the proceedings nor is the husband of the mother. The order made in such a proceeding does not constitute an adjudication binding on them or persons claiming through or under them that the child is or is not the legitimate offspring of married parents. An order adjudging that some person other than the mother's husband is the father of the child and ordering him to provide for its support is, it is plain, not a binding adjudication of illegitimacy. It does not establish the status of the child nor would it be competent evidence to establish illegitimacy in any proceeding to which others are parties."

It is well established that in proceedings of this nature where witnesses must be judged by their demeanor as well as their testimony, appellate courts give great weight to the findings of the trier of the facts who saw and heard the witnesses and was, therefore, in a much better position to judge their testimony than it is from the record (*People* v. *Arcieri*, 8 A D 2d 923;

*Matter of Kingston* v. *Anhalt,* 14 A D 2d 544; *Matter of Powell* v. *Anonymous,* 18 A D 2d 911.)

The letter written by appellant to respondent dated November 6, 1951, with the words " I love you and our baby " satisfied the requirement of section 517 of the Family Court Act.

I am unable to say, as was said in *People* v. *Arcieri* (*supra,* p. 923) " from an examination of the record that the findings herein are contrary to the law or against the weight of credible evidence." It follows, therefore, that the orders should be affirmed, with one bill of costs.

BRENNAN, J. (dissenting). I dissent and vote to reverse the orders and to dismiss the proceeding and the application for counsel fees.

There is no question that the petitioner was married to her first husband at the time the child in question was conceived and born; and that she remained married to him until the child was approximately 4½ years of age, when she apparently divorced her first husband and married the respondent. Access was available until she left her first husband sometime in June of 1951, but both testified to the practice of birth control. The petitioner testified that the child was conceived about a week or two weeks subsequent (July 4, 1951) and it is clearly established that the child was born April 11, 1952. It appears that the petitioner separated from the appellant in 1957 and divorced him in 1959. She did not bring the present proceeding until August 28, 1964 when the child was 12 years of age, at which time she was married to her third husband. It is my opinion that she is barred from bringing this proceeding by reason of section 517 of the Family Court Act, which provides that such a proceeding may not be brought after the lapse of more than two years from the birth of the child unless paternity has been acknowledged by the father in writing.

The petitioner's contention is that this is a support proceeding and not a paternity proceeding. With this contention I disagree. The court below apparently found that under section 24 of the Domestic Relations Law the child became legitimatized upon the marriage of the petitioner and the appellant in 1956, but in order to so find he had first to conclude that the child was illegitimate; and, in order to come to this conclusion, he had to find from the evidence that the first husband was not the child's father. Thus, this can only be considered as a paternity or filiation proceeding. I might note that in considering time limitations we look to the substance of the action rather than to the form (cf. *Blessington* v. *McCrory Stores Corp.,* 305 N. Y. 140).

I cannot agree with the majority that the letter wherein, in part, the appellant said that he loves the petitioner and " our baby " satisfies the requirement of section 517. In my opinion, this was not an unequivocal statement, inasmuch as such words in the letter do not constitute a clear acknowledgement of paternity about which there is no doubt or equivocation (cf. *Schuerf* v. *Fowler*, 2 A D 2d 541).

I am further inclined to the view that the petitioner's case was not established by " entirely satisfactory " evidence (*Commissioner of Public Welfare* v. *Ryan*, 238 App. Div. 607). It is to be noted that the Family Court ordered the first husband to support the child; and that he did so until 1958.

CHRIST, Acting P. J., and BENJAMIN, J., concur with HILL, J.; BRENNAN, J., dissents in separate opinion, in which HOPKINS, J., concurs.

Orders affirmed, with one bill of costs.