**Mary Ellen BROWN, for Mary Alice BROWN, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

No. CV–86–0817 (JBW).

United States District Court, E.D. New York.

Aug. 25, 1987.

The Legal Aid Soc., New York City by Morton B. Dicker, Attorney-in-Charge, Kathleen A. Masters, Supervising Atty. (Janet E. Sabel, of counsel), for plaintiff.

Andrew J. Maloney, U.S. Atty. for E.D. N.Y., Brooklyn, N.Y. by David M. Nocenti, for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Otis Fulton, a twenty-year-old living with his grandparents in South Carolina to help them in their declining years, was walking along the road one evening in September of 1972 when he was accidentally killed by a passing motorist. It is alleged that plaintiff Mary Alice Brown was then his two-year old daughter born out of wedlock (Exh. 18, Tr. 95–97). Some ten years passed before Mary Ellen Brown, plaintiff's mother, filed on her behalf a claim for surviving child's insurance benefits under the Social Security Act based on Otis Fulton's earnings record.

By this action plaintiff seeks reversal of a final decision of the defendant Secretary of Health and Human Services denying her application for social security benefits. The Secretary ruled that plaintiff had not demonstrated that she is Mr. Fulton's child. 42 U.S.C. § 405(g). His decision followed that of the Administrative Law Judge who excluded all testimony offered at the hearing concerning a written acknowledgment of paternity signed by Otis Fulton. This ruling imposed upon plaintiff a standard for documentary proof inappropriate in a hearing for reconsideration of a denial of benefits under the Social Security Act. The record, including the improperly excluded evidence, reveals no substantial evidence to support the Secretary's decision. *See Richardson v. Perales*, 402 U.S. 389,

91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Since all the evidence supports Mary Alice Brown's claim that she is Otis Fulton's child, the plaintiff's motion for judgment on the pleadings must be granted.

## I. FACTS

Mary Alice Brown was born on May 25, 1970 to Mary Ellen Brown in Brooklyn's Methodist Hospital. The father's name was not given on the birth certificate. At the time of the child's birth Mary Ellen Brown and Otis Fulton lived with their respective parents in the same apartment building. At the hearing, Otis Fulton's mother, Naomi Fulton Witherspoon, testified that while Ms. Brown was pregnant, her son, then eighteen, told her that he was the father, but that he was not prepared to marry Ms. Brown because he was a full-time student and "couldn't be responsible for a family" (Tr. 43). An affidavit of a friend and the testimony of Ms. Brown's sister, Mrs. Brown-Bowden, at the hearing showed that Otis Fulton openly and freely acknowledged to his friends and family that he was Mary Alice's father. Witnesses also stated that Otis Fulton regularly spent time with his child prior to moving to South Carolina the year before his death (Tr. 53, 57, 58, 88). Mrs. Witherspoon, the paternal grandmother, testified that she purchased the baby's layette, and that she "would help them as much as I could with the baby" from her own budget. She and her son purchased a stroller in which Otis Fulton would take the child to the park (Tr. 43, 45). The claimant's mother testified that Otis Fulton bought the child clothes, milk, juice and food (Tr. 32). The paternal grandmother has maintained regular weekly contact with Mary Alice, now seventeen years old (Tr. 43–44).

The claimant's mother, aunt, and paternal grandmother all testified at the hearing that Otis Fulton had signed an acknowledgment of paternity so that Ms. Brown could receive public assistance for Mary Alice from the New York State Department of Social Services. The paternal grandmother testified that her son told her that he, Mary Ellen Brown, her sister, Roger Mae Brown, and the maternal grandmother went to the Income Maintenance Center handling the Brown case where Otis Fulton signed an acknowledgment of paternity. Mrs. Witherspoon, Otis Fulton's mother, explained that Mary Ellen Brown was on Ms. Brown's mother's public assistance budget and that "they would not give her help for the baby" unless Otis Fulton signed an acknowledgment of paternity (Tr. 46, 47).

Roger Mae Brown-Bowden, aunt of the claimant, confirmed the written acknowledgment of Otis Fulton. She testified that she read the letter her sister received from the Department of Social Services telling her to obtain an acknowledgment from the natural father in order to receive public assistance for the child. The letter indicated that the Department of Social Service would close Ms. Brown's case because Otis Fulton had not signed the birth certificate unless she could obtain an acknowledgment of paternity from him (Tr. 28). Mrs. Brown-Bowden testified that she accompanied her sister, her mother (the maternal grandmother) and Otis Fulton to the Income Maintenance Center. There, at her sister's request, she read aloud the papers Otis Fulton signed (Tr. 56, 57).

The written acknowledgment has not been produced. The evidence of the Department of Social Services is that such records would have been routinely destroyed some years before the ALJ held a hearing on the matter.

## II. LAW

### A. *Entitlement to Surviving Child Insurance Benefits*

Claimant relies upon three separate provisions of the Social Security Act governing the proof of paternity necessary for illegitimate children to receive benefits.

First, Mary Alice Brown claims benefits based on the evidence that Otis Fulton executed a written acknowledgment of paternity. 42 U.S.C. § 416(h)(3)(C)(i). Second, she alleges that she has proven her right to inherit property from Otis Fulton under either South Carolina's or New York's laws of intestate succession. 42 U.S.C.

§ 416(h)(2)(A). Third, she claims that she established by satisfactory evidence that Otis Fulton was her father and that he and his family were contributing to her support commensurate with their ability to pay at the time of his death. 42 U.S.C. § 416(h)(3)(C)(ii). There is no need to address the potential conflicts of law question raised by proof through the laws of intestacy nor the question of adequacy of support since Mary Alice Brown has shown through overwhelming and uncontroverted evidence a written acknowledgment of paternity by Otis Fulton.

### B. *Evidence Not Limited to a Physical Document of Acknowledgment*

■ The ALJ excluded testimony about a written acknowledgment of paternity filed with the New York State Department of Social Services. Although evidence was introduced to show the loss or destruction of this record by the agency with which it was filed, the ALJ excluded the testimony of three witnesses concerning its execution and contents. The ALJ incorrectly applied a rigid evidentiary rule of exclusion by requiring that the "best evidence" of the acknowledgment, the original document, be produced.

The applicable evidentiary rules provide for admissibility of evidence at social security hearings even more readily than do the Federal Rules of Evidence at trials. The Social Security Act specifically provides that "[e]vidence may be received at any hearing before the Secretary even though inadmissible under rules of evidence applicable to court procedure." 42 U.S.C. § 405(b)(1). *See also* Fed.R.Evid. 1101 (applicability of rules). The Secretary is authorized to promulgate rules, regulations and procedures for hearings which are not inconsistent with the Act. 42 U.S.C. § 405(a). Regulations reiterate the statutory rule that the "administrative law judge may receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court." 20 C.F.R. § 404.950(c). One of the purposes of an oral hearing for reconsideration of a denial of benefits is to permit the claimant to introduce, "in an informal, nonadversary manner," 20 C.F.R. § 404.900(b), testimonial and other evidence which may not have been considered by the Social Security Administration when it denied the written application for benefits.

The standard for eligibility for benefits under the Act is the existence of "convincing evidence" of eligibility. To aid the Social Security Administration's review of claims for "convincing evidence" of eligibility, the Secretary has promulgated rules and regulations which state a preference for certain kinds of documentary evidence of proof of a fact relevant to eligibility. *See* 20 C.F.R. §§ 404.701–404.780. The regulations indicate that introduction of the designated "preferred" evidence of a fact relevant to eligibility will obviate the need for cumulative proof, since the Social Security Administration

> will generally find it is convincing evidence. . . . [U]nless we have information in our records that raises a doubt about the evidence, other evidence of the same fact will not be needed.

20 C.F.R. § 404.709.

The regulations list various types of records introducible as evidence that the claimant is the natural child of an insured wage earner but, curiously, do not specify any document as "preferred" evidence of parentage. *See* 20 C.F.R. §§ 404.731, 404.-736. Internal regulations of the Social Security Administration state that a written acknowledgment need not identify the child by name, be written by the wage earner, or even be signed by him. *See* Social Security Administration POMS § GN00306.170 (definition of acknowledgment in writing). As the Court of Appeals for the District of Columbia Circuit has observed, "[c]learly, these regulations would be utterly meaningless if an applicant could not use extrinsic evidence to complete the story." *Vance v. Heckler*, 757 F.2d 1324, 1327 n. 7 (D.C. Cir.1985).

■ In the absence of preferred evidence, the regulations require the Social Security Administration to "consider any other evidence" the claimant provides, to

"ask for additional evidence," and to determine if "all the evidence considered together may be convincing." 20 C.F.R. § 404.-709. It is error for the ALJ to apply a rigid rule of preference for a physical document, excluding testimonial evidence that the document existed. The ALJ did not reject the witnesses' evidence on credibility grounds. The uncontroverted testimony of claimant's three witnesses should have been admitted and credited as true.

### C. *Best Evidence Rule*

Even if the Federal Rules of Evidence had been applied at the hearing, the testimony offered would have been admissible. Federal Rule of Evidence 1005, the "best evidence" rule applicable to public records, would govern admission. The acknowledgment was made by a private individual in connection with an application for public assistance and was filed with a government agency. The Rule provides:

> The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, ... may be proved by copy, certified as correct in accordance with rule 902 or testified to be correct by a witness who has compared it with the original. *If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.*

Fed.R.Evid. 1005 (emphasis supplied).

Once plaintiff introduces credible evidence of loss or destruction of a public record by the agency with which it was filed, other evidence of contents of the record is admissible. Fed.R.Evid. 1004, 1005; *see also Amoco Production Co. v. United States*, 455 F.Supp. 46, 50 (D.Utah 1977). No degrees of secondary evidence of contents are required where neither the original nor a certified copy of a public record is available. Fed.R.Evid. 1004(1), (2). *A fortiori*, the best evidence rule would be satisfied under the more relaxed standards of an administrative hearing. Oral testimony of witnesses with personal knowledge of the contents of a destroyed document is admissible, and should have been admitted by the ALJ.

▮ The hearsay evidence of Otis Fulton's mother concerning her son's report to her of the signing of the document should also have been admitted, since hearsay is admissible in administrative hearings. It would, in any event, have complied with the exception for declarations against interest and statements concerning family history. Fed.R.Evid. 803(19), 804(a)(4), 804(b)(3), 804(b)(4); *McBride v. Heckler*, 619 F.Supp. 1554, 1561–62 (D.C.N.J.1985) (sworn statements of members of family should have been admitted and relied upon by ALJ).

### D. *Effects of Practice Excluding Testimony When Document Is Unavailable*

The effects of application of the rigid exclusionary rule the ALJ erroneously applied in this case are potentially devastating. While reliance on documentary evidence is necessary to the smooth functioning of claims processing, hearings are statutorily provided in order that no person whose claim is meritorious shall be denied benefits when written proof is not available.

The rule applied by the ALJ would necessarily have a disproportionate negative impact on the lowest socioeconomic groups. They are less likely to have a high level of education, to be aware of their right to claim benefits under the Social Security Act, and to preserve necessary records.

Application of a rigid best evidence rule to proof of paternity for purposes of making claims for a child's benefits would impact severely upon blacks and some other minority groups. Over 59% of all black children born in 1984, the last year for which data is available, were born to unmarried women; in the same year 13.4% of white children were born to unmarried women. *See* National Center Health Statistics: Advance Report of Final Natality Statistics, 1984, *Monthly Vital Statistics Report*, Vol. 35, No. 4 Supp. D.H.H.S.Pub. No. (PHS) 86–1120 (July 18, 1986). Black mothers are on average less educated than whites—in 1984, 82 percent of white moth-

ers compared with 67 percent of black mothers had completed high school and 18 percent of white mothers and 7 percent of black mothers had completed 4 years of college. *Id.* at 8. The differential in percentage of young teen-age births is even more striking—66.8 per thousand unmarried black women who gave birth in 1984 were between 15 and 17 years of age, while for white women the equivalent figure was 13.5. *Id.* at 32–33.

Claimant's mother's case is not uncommon or unusual. While she completed the eleventh grade in a segregated rural South Carolina school (Tr. 64–65), she has experienced difficulty obtaining steady employment in New York adequate to support herself and her three children. *See* letter from Janet E. Sabel, Esq., Counsel for plaintiff, to the court dated July 17, 1987. Mary Ellen Brown was unaware of her daughter's right to claim surviving child's insurance benefits until 1983, when the New York City Department of Social Services suggested she file a claim on behalf of her daughter (Tr. 30–31).

### III. APPLICATION OF LAW TO FACTS

Plaintiff demonstrated her exercise of reasonable diligence in attempting to obtain the original written acknowledgment executed by Otis Fulton or a certified or comparison copy of the record. The acknowledgment of paternity was filed in the claimant's maternal grandmother's public assistance case because claimant's mother was carried on her mother's case at the time claimant was born (Tr. 47). Claimant submitted a letter from the New York City Department of Social Services indicating that the file could not be located and that it "most probably" was destroyed pursuant to department policy on destruction of inactive records (Tr. 102, Exh. 21). Claimant also submitted an affidavit with supporting documentation stating that the policy of the New York City Department of Social Services is to destroy all Income Maintenance case records which are inactive for a period of six years or more (Tr. 104; Exh. 22). Claimant's grandmother's case was closed over ten years before the request for the file (Tr. 102).

Evidence of Otis Fulton's written acknowledgment of paternity through three witnesses was overwhelming and uncontradicted. All of the other evidence in the case of relationships of the Fulton and Brown families vis a vis the claimant support the inference of paternity, filial affection and concern for the child, and the likelihood of a written acknowledgment by Otis Fulton.

### IV. CONCLUSION

The ALJ's absolute and unyielding requirement that the physical document embodying a written acknowledgment of paternity be produced at the administrative hearing was erroneous. There is no substantial evidence to support the Secretary's decision. The case is reversed and remanded for computation of benefits.

So ordered.