**Mary L. JOHNSON, for self and on Behalf of Sabrina Johnson, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, and Kathy L. Osborne, Defendants.**

No. 88–858–Civ–J–12.

United States District Court,
M.D. Florida,
Jacksonville Division.

April 20, 1990.

Mary R. Acosta, Acosta and Rose, Miami, Fla., for plaintiff.

Robert W. Genzman, U.S. Atty., Dennis Moore, Asst. U.S. Atty., Tampa, Fla. (Bruce R. Granger, Mack A. Davis, James N. Stephens, John Jarrett, Office of Regional Counsel, Dept. of Health & Human Services, Atlanta, Ga., of counsel), for defendant Sullivan.

ORDER SUSTAINING OBJECTIONS TO REPORT AND RECOMMENDATION AND REMANDING CASE TO SECRETARY

MELTON, District Judge.

This cause is before the Court pursuant to plaintiff's action seeking review of the decision of the Secretary of Health and Human Services.

This matter was considered by the United States Magistrate, pursuant to standing order concerning assignment of social security cases. *See* Rule 6.01(c)(21), Local Rules of the Middle District of Florida. The Magistrate filed a Report and Recommendation on January 18, 1990, recommending that the decision of the Secretary be affirmed. Plaintiff timely filed written objections to the Report and Recommendation on January 29, 1990.

Upon consideration of the Magistrate's Report and Recommendation and the written objections thereto filed by plaintiff, and this Court's *de novo* review of the entire file, the Court is of the opinion that the objections are well-taken and should be sustained. Consequently, this action should be remanded to the Secretary for further proceedings consistent with this order. The Court's reasoning in reaching this conclusion is set forth hereafter.

Plaintiff Mary L. Johnson ("Mary") married Nathan G. Johnson, the insured, approximately four months before his death by suicide at age 19 in 1983. Seven weeks after the insured's death Mary gave birth to their daughter, Sabrina. Mary filed for and received benefits on behalf of Sabrina and herself. She collected those benefits without incident until the Social Security Administration notified her on July 7, 1986, that her benefits would be reduced. The stated reason for the reduction was the determination that Haley D. Osborne ("Haley") was the illegitimate daughter of Kathy L. Osborne ("Kathy") and the deceased insured. After receiving notice of this impending benefits reduction, plaintiff sought reconsideration of the determination. On July 23, 1987, the Secretary's Reconsideration Review Section issued its determination adverse to plaintiff and informed her that she could request a full hearing on the matter. She did so.

The Administrative Law Judge ("ALJ") held a hearing on January 25, 1988, and issued his decision on April 27, 1988. The ALJ placed the burden on plaintiff to disprove the prior initial and reconsideration determinations that Haley is the child of the deceased insured. Even so, the ALJ reviewed the evidence and ruled out several potential bases for establishing paternity of Haley. The ALJ suggested in cursory fashion that paternity might be established satisfactorily for purposes of Florida law, but it is clear that he did not follow through on his suggestion. Rather, the issue decided by the ALJ and presented in this review proceeding is the adequacy of an alleged written acknowledgement of paternity as measured by 42 U.S.C. § 416(h)(3)(C)(i)(I).

The disputed writing is a letter from the deceased insured to Kathy, postmarked July 31, 1981. No authenticity questions concerning the letter have been raised;

rather, the controversy centers on the legal import to be placed on the letter's contents. The ALJ opined:

It is first significant to note that at the time such letter was written, Haley Osborne would have been approximately 4 months old. In the text of the letter, Mr. Johnson said "I miss you and Haley so damn much." ... "Damn I miss you so bad, when I lay down at night. I wish you were beside me. (I hope there ain't nobody beside you except Haley.) I am just kidding. I have 99% faith in you." Further on in the letter he thanked Kathy for the picture and indicated that the first thing he was going to do when he again saw her was kiss. Next he said "I wish you were here so I wouldn't have to say goodbye. I love you and take care. *Give Haley a big kiss for me every morning and you will get yours when I see you.*"

From the text of the letter it is evident that there was a close, intimate and continuing relationship between Mr. Nathan Glenn Johnson and Ms. Kathy Osborne at the time of the writing of such letter on July 31, 1981. Of great significance is also the fact that at the time such letter was written Haley was only 4 months old and Mr. Johnson indicated "I hope there ain't nobody beside you except Haley. I have 99% faith in you." Such statement is very strong indication of acknowledgement that Haley was his child. Similarly, subsequent text in the letter where he said for Kathy to give Haley a big kiss for him every morning and that Kathy would get hers when he saw her, again coupled with the age of the baby at the time of the writing of the letter, is also a very strong acknowledgement.

The Administrative Law Judge concludes that an acknowledgement of a child in writing does not have to follow a set format, nor spell out "I (insert name) am the father of (insert name)." The writing which constitutes an acknowledgement must be interpreted within the context of all other evidence in the record. Therefore, the Administrative Law Judge concludes that there is an acknowledge-ment in writing by Mr. Nathan Glenn Johnson to the effect that Haley Osborne is his child. Such acknowledgement in writing forms part of Exhibit 11 and is supported and corroborated by credible testimony and other documentary evidence in the record.

The Appeals Council approved the ALJ's reasoning in its Action on Request for Review dated August 22, 1988.

The Magistrate's Report and Recommendation urges affirmance of the Secretary's decision. The ALJ's conclusion that the disputed writing constituted a sufficient acknowledgement of paternity is, in the Magistrate's view, entitled to deference as the construction of a statute by an agency entrusted with its administration. The Magistrate also found no error in use of extrinsic hearsay evidence by the ALJ in his analysis of the adequacy of the letter. Plaintiff objects to the Report and Recommendation.

The Court is of the opinion that plaintiff's objections are well-taken. The ALJ reached his conclusions without regard for the relevant case law and administrative interpretations concerning the written acknowledgement requirement. Properly viewed, the letter in this case does not match the standard imposed by those interpretations of the Social Security Act. Because the ALJ did not resolve the issues concerning Florida law, remand is the appropriate relief at this stage. The remand must take account, however, of the proper allocation of the burden of proof in the proceedings.

At the outset, it should be noted that the interpretation of the written acknowledgement requirement does not merit deference from this Court. The ALJ did not follow the path already established by the Secretary in earlier administrative and judicial actions. In a ruling shortly after the 1965 amendments that created a uniform standard for including illegitimate children within the Social Security Act, the Social Security Administration found inadequate an out-of-court settlement agreement to pay support for a child that did not on its face mention the nature of the relationship

between the party to the agreement and the child. *See* Social Security Ruling (SSR) No. 68–54 (Cum.Ed.1968), 1968 SSR LEXIS 26, 4. "An agreement to pay a fixed sum over a period of time in exchange for a release of further liability or obligation does not of itself constitute written acknowledgement of paternity of a child for section 216(h)(3) purposes." *Id.* The agency has waffled some in the degree to which the writing must be interpreted on its face. *See, e.g.,* SSR No. 77–23 (Cum.Ed.1977), 1977 SSR LEXIS 8, 2 (extrinsic evidence permitted to show that insured executed support agreement with intention of acknowledging paternity of child). The agency has consistently maintained, however, "[a]ny statement written by the wage earner, or at his direction, which acknowledges . . . the claimant as the wage earner's son or daughter is sufficient acknowledgement in writing to satisfy the statutory requirement." SSR No. 79–22 (Cum.Ed.1979), 1979 SSR LEXIS 2, 6.

The Secretary, then, has usually looked upon ambiguous written statements with disfavor. In *Cox v. Schweiker*, 684 F.2d 310 (5th Cir. Unit B 1982), the Secretary denied benefits to an application which produced as a written acknowledgement of paternity the diary of an insured who referred to the claimant as a "pretty" kid. The court endorsed the Secretary's determination.[1] *Id.* at 317 & n. 12. In *Chester ex rel. Chester v. Secretary of Health & Human Services*, 808 F.2d 473 (6th Cir. 1987), the Secretary found inadequate as a written acknowledgement a letter to the insured's mother stating, "tell Margaret [the child's mother] I will send money for the baby when I get a job." The court again endorsed the Secretary's determination. *Id.* at 475.

Based on the foregoing, then, deference to the ALJ's interpretation is unwarranted. Rather than the reasoned and consistent view of the written acknowledgement requirement that could command the deference of this Court, the ALJ's view is in conflict with positions expressed by the Secretary internally and in the judicial forum.[2] "Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 474, 102 L.Ed.2d 493 (1988).

■ Of course, an agency's interpretation of its governing statute is appropriate only if the statute is ambiguous; otherwise, the Court and the agency must give effect to the unambiguously expressed intent of Congress. *See, e.g., Sullivan v. Everhart,* —— U.S. ——, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990); *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Binding precedent strongly suggests that the written acknowledgement requirement is an unambiguous statutory command. *See Cox,* 684 F.2d at 316–17. If the Court is correct in reading *Cox* in this fashion, then deference to the ALJ would be inappropriate also for this reason. *See, e.g., Dole v. United Steelworkers of Am.,* —— U.S. ——, 110 S.Ct. 929, 938, 108 L.Ed.2d 23 (1990); *Board of Gov'rs of the Fed. Res. Sys. v. Dimension Fin. Corp.,* 474 U.S. 361, 368, 106 S.Ct. 681, 685, 88 L.Ed.2d 691 (1986).

The cases interpreting the written acknowledgement requirement apply a rigorous analysis to the proposed writings. The cases mentioned previously, *Cox* and *Chester,* illustrate the strictness of judicial construction of the requirement. In *Cox,* the court found the personal writings of the

---

**1.** The *Cox* decision, as a Unit B decision, is binding precedent on this Court. *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir. 1982) (adopting all Unit B decisions as precedent in the Eleventh Circuit); *see also Hart ex rel. Morse v. Bowen,* 802 F.2d 1334, 1336 (11th Cir.1986) (applying *Cox* as binding precedent).

**2.** The Social Security Rulings discussed previously are agency rulings designed to serve as

precedents with the Social Security Administration. They are susceptible to modification or revocation by later legislation, regulations, court decisions or rulings. They form a basis to review agency policy on a particular issue. *See, e.g., Sullivan v. Zebley,* —— U.S. ——, 110 S.Ct. 885, 891 n. 9, 107 L.Ed.2d 967 (1990); *Heckler v. Edwards,* 465 U.S. 870, 873 n. 3, 104 S.Ct. 1532, 1534 n. 3, 79 L.Ed.2d 878 (1984).

insured concerning the minor claimant to be inadequate because, although they were flattering to the child, they did not "in any way suggest a father-son relationship." 684 F.2d at 317. Likewise, the court in *Chester* agreed with the Secretary's analysis that the writing fell short because "it does not identify the child by name nor does it acknowledge that the 'baby' referred to is the child of the deceased insured." 808 F.2d at 475. By contrast, cases finding an adequate written acknowledgment of paternity involve either a public document executed for that purpose, *see, e.g., Patterson v. Bowen*, 839 F.2d 221, 222 (4th Cir.1988); *Brown ex rel. Brown v. Bowen*, 668 F.Supp. 146, 148 (E.D.N.Y. 1987), or a writing that provides a self-contained identification of the minor claimant as the child of the insured, *see, e.g., Vance v. Heckler*, 757 F.2d 1324, 1328 (D.C.Cir. 1985).

■■■ *Patterson, Brown* and *Vance* involved documents that serve the purpose of promising financial support for the minor claimant. This common fact is not mere coincidence. "To acknowledge is 'to own or admit as implying obligation or incurring responsibility; * * *'." *Weyerhaeuser Timber Co. v. Marshall*, 102 F.2d 78, 81 (9th Cir.1939) (quoting Funk & Wagnall's New Standard Dictionary (1937 Ed.)) (construing phrase "acknowledged illegitimate child" as used in Longshoremen's and Harborworkers' Compensation Act). Many states with a written acknowledgement method for establishing paternity in inheritance disputes also emphasize this

linkage between the writing and an implication of responsibility for the support of the illegitimate child. *See, e.g., State v. Wolfe*, 156 Conn. 199, 239 A.2d 509, 512–13 (1968); *In re Horne's Estate*, 149 Fla. 710, 7 So.2d 13, 16 (1942); *Goins v. Lott*, 435 N.E.2d 1002, 1008 n. 5 (Ind.App.1982). Thus, while the ALJ correctly perceived that a written acknowledgement need not follow a set formality in its language, a writing should not be considered an acknowledgement unless it arises in such circumstances that it suggests the author's acceptance of the responsibilities attendant to a confession of paternity.[3]

The notion of tieing judicial recognition of a writing to the admission of obligation or responsibility has a firm foundation in the structure of the Social Security Act. In *Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), the Supreme Court upheld the presumption of dependency incorporated into the eligibility standards for illegitimate children, including the written acknowledgement of paternity section. The Court rejected a due process challenge because "the factors that give rise to a presumption of dependency [do not] lack any substantial relation to the likelihood of actual dependency." *Id.* at 513, 96 S.Ct. at 2766. The reasoning in support of this conclusion is enlightening:

Conceding that a written acknowledgment lacks the imprimatur of a judicial proceeding, it too establishes the basis for a rational presumption. Men do not customarily affirm in writing their re-

<hr>

**3.** Congress enacted 42 U.S.C. § 416(h)(3)(C) to resolve the inequities produced by differing state laws as incorporated through § 416(h)(2)(A). *See Luke ex rel. Luke v. Bowen*, 666 F.Supp. 1340, 1345 (D.S.D.1987), *aff'd*, 868 F.2d 974 (8th Cir.1989). State law, then, should not be viewed as source of binding interpretation concerning the adequacy of a written acknowledgement; however, absent a federal law of domestic relations, general common law sources and the law of the states are the most appropriate sources to consult. *See DeSylva v. Ballentine*, 351 U.S. 570, 580, 76 S.Ct. 974, 979, 100 L.Ed. 1415 (1956); *McMillian ex rel. McMillian v. Heckler*, 759 F.2d 1147, 1153 (4th Cir. 1985). In addition to the cases already cited, it merits note that an annotation published several years prior to the amendment that added

§ 416(h)(3)(C)(i)(I) stated, "While the writing containing the recognition need not ... be in any particular form, ... it should contain a *clear and unequivocal* acknowledgement that the writer is the father of the child." Annotation, *What Amounts to Recognition within Statutes Affecting the Status or Rights of Illegitimates*, § 9, 33 A.L.R.2d 705, 725 (1951) (emphasis added); *accord Peetz v. Masek Auto. Supply Co.*, 161 Neb. 588, 74 N.W.2d 474, 479 (1956) (paternity must be "directly, unequivocally and unquestionably acknowledged" in writing); *Schuerf v. Fowler*, 2 A.D.2d 541, 156 N.Y.S.2d 859, 860 (1st Dep't 1956) (writing must be "a clear acknowledgment about which there is no doubt or equivocation"); *In re Cravens*, 268 P.2d 236, 241 (Okla.1954).

sponsibility for an illegitimate child unless the child is theirs and a man who has acknowledged a child is more likely to provide it support than one who does not. *Id.* (adopting and quoting in full *Norton v. Weinberger*, 364 F.Supp. 1117, 1128 (D.Md. 1973) (three-judge court)). Since the basis for upholding the presumption of dependency is the assumption that support probably will be paid by an insured who has executed a written acknowledgement of paternity, the adequacy of a writing should be measured in a fashion that validates the underlying assumption. This does not dictate a form to the language of a written acknowledgement, but it does argue against acceptance of casual writings that are not express and self-contained in their statement of the father-child relationship.

Stated succinctly, "[i]ncomplete or ambiguous acknowledgements of paternity are not construed presumptively in illegitimate claimants' favor." *Garcia ex rel. Garcia v. Sullivan*, 874 F.2d 1006, 1008 (5th Cir.1989); *accord Parker ex rel. Lamon v. Sullivan*, 891 F.2d 185, 190 (7th Cir.1989). A writing satisfies the statute when it "unequivocally acknowledges paternity," *Montgomery v. Schweiker*, 523 F.Supp. 1128, 1131 (D.Md.1981), that is, when it "is susceptible of only one reasonable construction," *Vance*, 757 F.2d at 1328.

■ The writing in this case does not satisfy the rigorous standard applied to purported written acknowledgements of paternity. It is certainly less specific on the matter of the author's relationship to the minor claimant than the writings found inadequate in *Cox* and *Chester*. The ALJ correctly concluded that the letter reflects an intimate relationship between the insured and the letter's recipient, Kathy. Additionally, the ALJ could reasonably con-

clude, as he did, that the insured had an affectionate attitude toward the minor claimant, Haley. Extending these conclusions to find that the letter is a written acknowledgement of paternity, however, transgresses the established interpretations of the statutory writing requirement. The letter provides no unequivocal language concerning paternity, such as a reference to Haley as "my daughter" or "our baby". *Cf. Anonymous v. Anonymous*, 25 A.D.2d 350, 269 N.Y.S.2d 653, 655 (2d Dep't 1966), *aff'd*, 19 N.Y.2d 840, 280 N.Y. S.2d 405, 227 N.E.2d 318 (1967). Moreover, the conclusion of paternity is not the *only* reasonable construction of the contents of the letter. Certainly a man can have an intimate relationship with a woman and an affectionate attitude toward her infant child without being the father of that child.[4] *Cf., e.g., Jensen v. Voshell*, 193 N.W.2d 86, 88–89 (Iowa 1971); A. Tyler, The Accidental Tourist *passim* (1985).

The ALJ appears to be uncomfortable with reliance on the terms of the letter alone; thus he holds that the words must be read in the context of all evidence in the record. His appeal to the remaining body of evidence other than the letter is error as a matter of law. "[U]se of extrinsic evidence unrelated to the writing would come close to abandoning the writing requirement." *Montgomery*, 523 F.Supp. at 1131. The additional evidence to which the ALJ refers does not merely explain the meaning of the words or phrases used in the writing, *cf. Vance*, 757 F.2d at 1328; the additional evidence is independent evidence concerning paternity which simply cannot be applied to evaluate the adequacy of the letter as a written acknowledgement of paternity while preserving the statutory command that the acknowledgement of paternity be in writing.[5] The issue is not, as the

---

**4.** The ALJ seems to place great significance on the insured's statement that he had "99 percent faith" that Kathy was not sleeping with another man. Such a statement, though, is double-edged. Does the author imply he has some suspicion of infidelity or some reason to suspect past infidelities? Or is he merely stating his confidence in her fidelity in a coy, teasing fashion? The uncertainty posed by subsequent interpretation provides immediate illustration

why the written acknowledgement requirement must be strictly construed.

**5.** The Court of Appeals for the District of Columbia Circuit stated in dicta that "[b]y limiting ourselves to the face of the letter, we do not intend to suggest that extrinsic evidence may not be used to shed light on an otherwise ambiguous written acknowledgement of paternity." *Vance*, 757 F.2d at 1327 n. 7. This statement

ALJ and the Appeals Council apparently viewed it, a matter of the admissibility of the other evidence into the hearing generally. While the Social Security Act authorizes the admission of a wide range of evidence for many purposes, the writing requirement is self-limiting as to the evidence that may be considered as a written acknowledgement of paternity. It must be kept in mind that § 416(h)(3)(C)(i)(I) is not concerned with paternity *per se;* rather, the statute is addressed to the written acknowledgement of paternity, which serves as a surrogate for both paternity and the test of financial dependence otherwise applied to claimants.

Having determined that the only stated reason for the ALJ's decision is not supported by substantial evidence, the Court cannot affirm the Secretary, *see Patterson,* 839 F.2d at 225 n. 1; the state law method for proving paternity, 42 U.S.C. § 416(h)(2)(A), which the ALJ left unadjudicated, cannot be considered for the first time in this forum. The Court therefore must remand the case for further proceedings on the issues left unaddressed by the ALJ. In doing so, the Court directs the ALJ to correct his erroneous assignment of the burden of proof to plaintiff. The ALJ placed the burden on plaintiff because she was claimant for the amount of benefits that had been reduced. The flaw in his reasoning lies in the absence of notice to plaintiff concerning the pendency of the initial determination involving Kathy and Haley. The Secretary's regulations guarantee such notice to plaintiff prior to the

diminution of her benefits. *See* 20 C.F.R. §§ 404.988(c)(1); 404.992(c); 404.993; 404.-995. The initial determination in favor of Kathy and Haley therefore is not binding on plaintiff because she was not a party to the proceeding with appropriate notice. *Cf. Baker ex rel. Baker v. Sullivan,* 880 F.2d 319, 320–21 (11th Cir.1989); *Kennedy v. Bowen,* 814 F.2d 1523, 1527 (11th Cir. 1987). The reconsideration determination likewise cannot be binding because it is based on the same hearing for which notice was lacking. The hearing before the ALJ from which this review action arises was the first proper hearing at which the propriety of reducing plaintiff's benefits was at issue and accordingly the burden rested on the Secretary to prove *de novo* that an illegitimate child had entitlement on the deceased insured's account.

Based on the foregoing, it is

ORDERED AND ADJUDGED:

1. That plaintiff's objections to the Magistrate's Report and Recommendation are hereby sustained;

2. That the decision of the Secretary of the Department of Health and Human Services is hereby reversed; and

3. That this case is hereby remanded to the Secretary for further proceeding consistent with this Order.

DONE AND ORDERED.

---

should not be read as a broad endorsement of the use of extrinsic evidence. There is no indication in *Vance* that the court intended to depart from the sound principle that extrinsic evidence is permissible only if it is related to the writing. *Cf. Montgomery,* 523 F.Supp. at 1131. The examples given in *Vance* to illustrate the need for extrinsic evidence are instances in which the evidence is necessary to confirm the identity of the author of the writing or the identity of the child who is the object of the writing.

The Secretary's Memorandum in Support of the Secretary's Decision, at 14, takes the position that *Vance* endorses the use of independent testimony on the issue of paternity to clarify the ambiguity of a written document. The Court reads the case otherwise. The broader reading, moreover, would undermine the soundness of

*Vance.* That court concluded that § GN00306.170 of the Social Security Administration's Program Operations Manual ("POMS") compelled the allowance of extrinsic evidence because "these regulations would be utterly meaningless if an applicant could not use extrinsic evidence to complete the story." 757 F.2d at 1327 n. 7. The POMS, however, is meaningless from a judicial point of view because it has no legal force and does not bind the Secretary. *See Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981); *Parker,* 891 F.2d at 189–90 (rejecting argument based on § GN00306.170). The authority of *Vance* is not persuasive, then, regarding a broad extrinsic evidence rule for the evaluation of a written acknowledgement of paternity.