Carmen M. SUAREZ,
Plaintiff, Appellee,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellant.

No. 84–1143.

United States Court of Appeals,
First Circuit.

Submitted Sept. 14, 1984.

Decided Feb. 25, 1985.

Rehearing Denied April 3, 1985.

John M. Sacchetti, Chief, Retirement and
Survivors Insurance Litigation Branch, Lil-
lie Price, Washington, D.C., Richard K. Wil-
lard, Acting Asst. Atty. Gen., Washington,
D.C., Daniel F. Lopez Romo, U.S. Atty.,
Francisco A. Besosa, Asst. U.S. Atty., Hato
Rey, P.R., and Randolph W. Gaines, Depu-
ty Asst. Gen. Counsel for Litigation, Balti-
more, Md., on brief for defendant, appel-
lant.

Rafael Carreras-Valle, Rio Piedras, P.R.,
on brief for plaintiff, appellee.

Before CAMPBELL, Chief Judge, COF-
FIN and BOWNES, Circuit Judges.

PER CURIAM.

The Secretary of Health and Human Ser-
vices appeals the district court judgment
reversing the Secretary's denial to appellee
Carmen Suarez of benefits under the child
disability provisions of the Social Security
Act.

Appellee, born on July 30, 1926, fifty-five
years old at the date of the hearing in 1982
before the Administrative Law Judge,
claims disability from manic depressive
psychosis and neurosis since age twelve.
The record [1] reveals that she suffered her
first serious depressive episode at around
age twelve. Two additional depressive epi-
sodes, at around age eighteen, culminated
in claimant's hospitalization in September
of 1944 at the Ontario Hospital (now Lon-
don Psychiatric Hospital) in Canada where
the disorder was diagnosed as manic de-
pressive psychosis. Ms. Suarez underwent
electroshock and insulin treatments while
at Ontario and after some improvement

1. The record of hospitalizations between 1944
and 1946, and in 1972 and 1973, reflects the
painstaking efforts of the local social security
officials charged with accumulating as much of
a record as possible for making disability deter-
minations.

was transferred on January 1, 1945 to the Institute of Living in Hartford, Connecticut, where she also received shock treatments and was institutionalized for a full year until January of 1946. On discharge, she was reported as having been "stabilized" for three to four months and her prognosis appeared "fairly good".

On returning to Puerto Rico she returned to the care of the doctor who had treated her in the past. After many years he died and his records were destroyed. There was thus no medical evidence from 1946 until claimant was again hospitalized in 1972 and in 1973 in the Hato Rey Psychiatric Hospital in Puerto Rico, with a diagnosis of "Schizophrenia, Schizo-affective type, chronic." The only testimony before the A.L.J. was that of claimant, although claimant's sister, who had always lived with her except during claimant's time in Canada and Hartford, accompanied her to the hearing. She told of her hospitalization and shock treatments in Canada, her year in Hartford, and of the 26 intervening years before her 1972 hospitalization. She spoke without reference to specific years, describing bouts of depression and spells of euphoria, suicide attempts, and medications taken. Her testimony occupied one half hour and 20 pages of transcript.

On the basis of this evidence, the A.L.J. denied claimant's application for child's disability insurance benefits. The A.L.J. held that Ms. Suarez was not disabled within the meaning of section 202(d)(1) of the Act, 42 U.S.C. § 402(d)(1), because, although her condition between 1944 and 1946 (prior to her twenty-second birthday on July 30, 1948) was "severe", she failed to prove the condition subsisted *continuously* thereafter. The A.L.J. further held that Suarez could not recover benefits exclusively for a "closed period of disability for her severe condition" in 1944–46 because of the amount of time which had elapsed between 1946 and 1981, when she filed her application for benefits.

Subsequently claimant requested review by the Appeals Council. In support counsel forwarded three substantive documents. The first was a September 1981 report from claimant's current psychiatrist, Dr. Nieves, describing the early hospitalizations and giving his opinion that she "had never get [sic] a complete recovery since initial appearance of symptoms" and that "[h]er behavior ... had always prevailed the primary symptoms of psychopatology [sic]." The second was an affidavit of a former judge and neighbor of claimant to the effect that on several occasions since 1941 he had heard her screaming, and that he understood from claimant's parents that she refused to leave her room and was in deep depression for long periods of time.

The third and most relevant document was a written statement from claimant's sister who had been silent at the hearing before the A.L.J. Her statement gave the only significantly corroborative information about claimant's condition from 1946 until 1972. The gist of it was that claimant, on returning to Puerto Rico began a two year secretarial course. Because of her varying "highs and lows", she would secure very good grades at times and would fail courses at other times. It took her four to five years to complete the course. Subsequently she held jobs for only brief periods. "[F]rom then on, she spent most of her life locked up in the house...." The Appeals Council concluded that neither the sister's statement nor those of the neighbor and Dr. Nieves would alter the A.L.J.'s decision and denied the request for review.

The district court, relying on *Axe v. Harris*, 503 F.Supp. 1049 (E.D.Pa.1980), *after remand, Axe v. Department of Health and Human Services*, 564 F.Supp. 789 (E.D.Pa.1983), rejected the Secretary's— and the A.L.J.'s—view that to be entitled to child's disability insurance benefits claimant must have suffered from a disability continuously from before age 22 until the time benefits were sought. It was enough that claimant was disabled prior to reaching age 22 and that she suffered the same disability when she applied for benefits. The court accordingly reversed the Secretary's decision.

We find ourselves in the uncomfortable position of concluding that the Secretary committed no error of law or abuse of discretion while at the same time harboring the haunting suspicion that claimant's case was not fully and fairly presented.

We begin by making clear that claimant's mental condition from 1944 to 1946 is relevant only in relation to the question of whether her disability *commenced* prior to her twenty-second birthday and thus to her right to recover benefits for any disability subsequent to whenever her father's insured status came within the provisions of the Act. The A.L.J.'s characterization of Ms. Suarez's condition during that time as "severe" and the fact that the A.L.J. considered the possibility of granting her benefits for a closed period between 1944 and 1946, leaves no doubt that claimant was disabled within the meaning of the Act before age 22.

Next, we consider the nature of the child's benefits provisions of the Social Security Act. They were enacted to protect any child financially dependent on an insured wage earner in the event that that wage earner becomes unable to continue providing for the child's support. *See Adams v. Weinberger,* 521 F.2d 656, 659 (2d Cir.1975). Thus under certain statutorily defined circumstances, the law grants benefits to "[e]very child ... of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual", 42 U.S.C. § 402(d)(1).[2] To be eligible for benefits the child must file an application, be unmarried, be dependent on the wage earner, and be either less than eighteen years old, less than nineteen years old and a full-time student, or be "under a disability (as defined in section 433(d) of this title) which began before he attained the age of

22...." *Id.* The regulation implementing this part of the statute contains identical requirements. *See* 20 C.F.R. § 404.350.

The question is whether this section of the Act requires a claimant to prove a *continuous, uninterrupted* disability after age twenty-two. The legislative history of this provision lends support to the Secretary's stance. Senate Report No. 2133 mentions recognition of "the situation faced by people who have the care of a child who because of mental deficiency *never* grows up, or who because of a physical impairment requires constant care *throughout his life."* 84th Cong., 2d Sess. 2, *reprinted in* 1956 U.S.Cong. & Ad.News 3877, 3881 (emphasis added). Likewise, after discussing ways in which childhood disability could be established, the Report concludes that "the difficulty involved in determining that he was totally disabled before age 18 [now 22] and *has remained so* will not be substantial." *Id.* at 3882 (emphasis added). The Report thereafter refers to the child as being "permanently and totally disabled since before he reached" the critical age, now 22. *Id.* at 3877; so also does the House Report. H.R.Rep. No. 1189, 84th Cong., 2d Sess. 2, at 8, 24–25.

In light of this history and the wording of the statute we cannot say that the Secretary's interpretation is plainly wrong or patently inconsistent with the controlling statute. *Lybarger v. Cardwell,* 577 F.2d 764, 766 (1st Cir.1978). We note also that the only circuit court opinions which have been called to our attention have registered similar views. *Reading v. Mathews,* 542 F.2d 993, 997 (7th Cir.1976); *Futernick v. Richardson,* 484 F.2d 647, 648 (6th Cir. 1973); *Reyes v. Secretary of Health, Education and Welfare,* 476 F.2d 910, 914 (D.C.Cir.1973).[3]

---

**2.** This threshold requirement is obviously satisfied in this case. Although we have no information as to when claimant's father became eligible for such benefits, claimant testified that her insured father died some two months before her hearing.

**3.** We view the reasoning from *Axe v. Harris,* 503 F.Supp. 1049 (E.D.Pa.1980), relied on by the

district court, as being fatally flawed, not only in disregarding all but one of the cases cited in the text and the legislative history, but in seeking support in a reentitlement regulation, 20 C.F.R. § 404.351. The most favorable part of this regulation allows a child who has been granted benefits but whose entitlement has terminated to become reentitled if his disability recurs within 84 months of the prior cessation

We therefore hold that the A.L.J. was guided by the proper standard in looking for evidence of claimant's continuing total disability after 1946. We also hold that the evidence before the A.L.J. supported her conclusion that such disability had not been shown. Filling in the long hiatus between 1946 (the Hartford institutionalization) and 1972 (the first Hato Rey hospitalization) were only claimant's brief, general, and somewhat disjointed comments made without reference to specific periods. Nor can we hold that the Appeals Council abused its discretion in denying claimant's request for review and in concluding that the several statements submitted would not have altered the A.L.J.'s recommendation.

This brings us to our strong feeling that the assistance claimant received from her counsel was too little, too late, or both. As we have noted, the only helpful medical reports were obtained by the social security officials. Counsel's contribution to the presentation of the case was not apparent from the hearing. It is inconceivable to us why claimant's sister, who had lived with her for most of their joint lives, was not asked to testify orally—and in much greater detail—to what she later subscribed to in writing before the Appeals Council.[4] If in fact claimant had continuously been totally disabled since her return to Puerto Rico in 1946, some corroborative evidence from neighbors and other family members might be thought to have been available. School and employment records would also have been helpful. And, with fairly detailed medical observations recorded during 1944 and 1945, supplemented by lay testimony of claimant's conduct thereafter, a psychiatric expert might have been able to give a credible opinion of the nature and

probable degree of claimant's continuing manic-depressive disability.

As it happened, the A.L.J. had nothing before her but the hospital reports, with a 26 year gap between them, and a psychotic claimant's general responses to the A.L.J.'s questions. In a belated effort to supply something more, claimant's counsel sent the several general statements we have described to the Appeals Council. While not compelling, they suggest that an opportunity to elicit valuable testimony had been allowed to slip by.

We do not suggest that the A.L.J. failed in her responsibility to develop the facts. *Richardson v. Perales*, 402 U.S. 389, 410, 91 S.Ct. 1420, 1431, 28 L.Ed.2d 842 (1971). The claim involved an illness dating back almost four decades; it may thus not have been surprising that no corroborative testimony was forthcoming, particularly since claimant was represented by counsel. The A.L.J. did not know, for example, that claimant's sister had lived under the same roof with claimant for most of her life. As for counsel's performance, or lack of it, we have already noted our dissatisfaction.

We add one further fact. In May of 1981, in a per curiam opinion in another social security appeal, *Caraballo v. Secretary of Health and Human Services*, 657 F.2d 259 (1st Cir.1981), we admonished the same attorney to desist from bringing frivolous appeals which "amounted to little more than pleas that we retry the administrative case." Our problem here is that the appeal, while perhaps not legally frivolous, is clearly vulnerable because of the absence of any discernible efforts by counsel to flesh out the record at the administrative level.

of disability. But in the case of claimant, more than 300 months elapsed between January, 1946, when she was released from the Hartford institution and July, 1972, when she was hospitalized at Hato Rey. If, therefore, claimant were to prevail, she, a new claimant, would receive more favorable treatment than the law accords to one who once was fully entitled and seeks to become reentitled. Such a result would indeed be perverse.

4. While such evidence may lack the strength of medical reports, it must be considered and may be useful if it is consistent with past and present medical diagnoses. *Basinger v. Heckler*, 725 F.2d 1166 (8th Cir.1984); *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir.1983); *Kelly v. Matthews*, 420 F.Supp. 359 (W.D.N.C.1976).

We therefore suggest that the interests of justice may well be served in this case if the Secretary would accord to another attorney, if requested, the privilege of attempting to supplement the record by detailed submissions to the Appeals Council, with the possibility of a reopened hearing before an A.L.J.

*The judgment is reversed; a copy of this opinion to be sent to the General Counsel, Department of Health and Human Services. The Clerk is directed to mail a copy of this opinion to claimant.*