839 F.2d 221
 20 Soc.Sec.Rep.Ser. 495, Unempl.Ins.Rep. CCH 17,895
Audrey A. PATTERSON and Woodrow W. Patterson, Plaintiffs-Appellants,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant-Appellee,
Julie M. White, as mother and next friend of Travis Z.
White, Intervenor.
 No. 86-2188.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 6, 1987.
Decided Feb. 17, 1988.
 
 Claire S. Hoffman, Office of the Gen. Counsel, Social Security Div., Dept. of Health & Human Services, Washington, D.C. (Donald A. Gonya, Chief Counsel for Social Security; Randolph W. Gaines, Deputy Chief Counsel, Baltimore, Md., for Social Security Litigation; John M. Sacchetti, Chief, Retirement and Survivors Ins. Litigation Branch, Washington, D.C., Robert W. Spessard, Roanoke, Va., on brief), for appellants Patterson and appellee Bowen.
 Dean R. Manor, Danville, Va. (Randi Blumenson, Suffolk, Va., Rickey G. Young, Virginia Legal Aid Society, Inc., on brief), for appellee White.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 Woodrow and Audrey Patterson appeal from the district court's order of summary judgment in this Social Security benefits dispute. Both the Secretary of Health and Human Services (Secretary) and the district court found that Woodrow Patterson, under Social Security law, is the father of an illegitimate child, Travis Zachary White, and accordingly decided that Travis was entitled to child's insurance benefits on Woodrow Patterson's wage earner's account. We hold that substantial evidence supports the district court's findings and affirm.
 
 
 2
 The Pattersons are married. Mr. Patterson is over 70 years old. He has been receiving social security retirement since July 1977. Mrs. Patterson receives wife's insurance benefits on Mr. Patterson's wage earner's account.
 
 
 3
 Travis Z. White was born July 1, 1984. Travis' birth certificate listed his mother as Julie White but did not contain a corresponding entry for his father. Mrs. White is presently not married. After applying for assistance with the Virginia Department of Social Services (Virginia DSS) prior to Travis' birth, Mrs. White gave the names of Mr. Patterson and two other men as Travis' possible fathers. Shortly after Travis' birth, a paternity investigation was undertaken by the Division of Support Enforcement of the Virginia DSS. Mr. Patterson filed, in writing, a sworn statement, taken on October 15, 1984, acknowledging that he was Travis' father and he was responsible for the child's support and maintenance under Virginia law.
 
 
 4
 In November 1984, a Notice and Finding of Financial Responsibility was sent to Mr. Patterson by the Virginia DSS. Mr. Patterson later visited the Virginia DSS offices and was informed of his right to appeal the agency's finding.
 
 
 5
 The record shows that Mr. Patterson paid some support for Travis. However, exactly how much is not clear. Julie White testified that he made two payments, while Mr. Patterson acknowledges at least one payment.
 
 
 6
 On November 27, 1984, Julie White filed an application for child's benefits on Mr. Patterson's account on behalf of Travis. Soon thereafter, in early December 1984, Mrs. Patterson was informed by the Secretary that her spousal benefits were subject to reduction due to Travis' potential entitlement. The notice told Mrs. Patterson of her right to protest and her attorney in fact filed such a protest with the Secretary on December 10, 1984. Nevertheless, Travis' application for benefits was ultimately approved on January 28, 1985.
 
 
 7
 In June 1985, Mr. Patterson made a signed statement for the Secretary's records. In his statement, Mr. Patterson acknowledged that he had had sexual relations with Julie White and that he could be the father although he was unsure of this. Mr. Patterson also related that both Mrs. Patterson's attorney and the investigator for the Division of Support Enforcement of the Virginia DDS had requested that he submit to a blood test. Mr. Patterson agreed to do so but for some reason the blood test was not taken. Mr. Patterson also acknowledged the child support payment to Travis but said that he stopped future payments when told to do so by his wife's attorney. Finally, Mr. Patterson requested that any future payments to Travis be removed from his check rather than his wife's.
 
 
 8
 On August 27, 1985, pursuant to Mrs. Patterson's request, the Secretary reconsidered the original decision granting Travis benefits. On the basis of Mr. Patterson's signed acknowledgment and his later expressed belief that he may be Travis' father, the Secretary upheld the earlier ruling that Travis was entitled to child's benefits on Mr. Patterson's account. In earlySeptember 1985, Mrs. Patterson requested an administrative hearing.
 
 
 9
 On January 21, 1986, a hearing was held before an administrative law judge. Mrs. White and Mr. Patterson each testified at this hearing, generally to facts already related. Mrs. White also offered, on behalf of Travis, Mr. Patterson's acknowledgment of paternity to support Travis' claim that he was entitled to benefits. The ALJ found that Mr. Patterson's acknowledgment constituted an acknowledgment in writing within the meaning of 42 U.S.C. Sec. 416(h)(3)(A) and, therefore, Travis was "deemed" to be the child of Mr. Patterson. The ALJ refused to strike the acknowledgment and also refused to order blood tests to be taken. Mrs. Patterson had argued that the ALJ should take steps to determine whether Mr. Patterson was actually Travis' father. However, the ALJ ruled that all that was required was a determination of whether Travis met the requisite statutory requirements. Accordingly, Mrs. Patterson's defense was denied.
 
 
 10
 The Pattersons appealed the ALJ's decision soon after it was rendered. However, their request for review was considered by the appeals council and denied because there was "no basis under the [pertinent] regulations for granting ... review." Consequently, the ALJ's decision stood as the Secretary's final decision at that point.
 
 
 11
 Having failed to convince the Secretary that Travis was not entitled to benefits on her husband's account, Mrs. Patterson, along with her husband, filed their suit in the district court. The Pattersons alleged in their complaint that Mr. Patterson did not voluntarily sign the acknowledgment of paternity and further stated that no one was sure who the father really was, including Mrs. White. The Secretary responded to the Pattersons' complaint, stating that the Secretary's decision was correct and in accord with applicable law and regulations and further that the Secretary's findings were supported by substantial evidence. Soon after the Secretary's answer was made, Julie White intervened as a defendant in the case on behalf of Travis.
 
 
 12
 The district court granted the Secretary's motion for summary judgment and held that there was substantial evidence to support the Secretary's final decision. As to the Pattersons' claim that Mr. Patterson did not voluntarily sign the acknowledgment of paternity and that he really did not understand the nature and implications of such, the district court disagreed. The lower court ruled that substantial evidence existed to support the Secretary's finding that the acknowledgment was made voluntarily and that Mr. Patterson understood the nature of the admission. This evidence included: (1) the fact that Mr. Patterson actually paid support through the Virginia DSS; (2) the fact that he indicated he would have continued to pay child support but for the advice of his wife's attorney; and (3) the fact that Mr. Patterson indicated that he intended Travis to receive benefits, though he preferred that they be removed from his check and not his wife's.
 
 
 13
 The district court also approved the ALJ's decision not to order blood tests. In so doing, the court observed that it is the ALJ's function to decide the case only on the evidence before him. In other words, according to the court, if the evidence before the ALJ establishes a child's right to be deemed the wage earner's natural child, it would not be reversible error to decline to undertake any independent fact gathering to rebut this finding. The district court also correctly reasoned that the Pattersons had the burden of proof which was a proper item to consider, as was the fact that the acknowledgment was only an item of evidence, as were the other facts which might have been proven.
 
 
 14
 It was at this time that the case before us took a peculiar twist. The Secretary, who had prevailed on his summary judgment motions, switched sides in the case. One week after the district court's order was entered, the Secretary moved in the district court to amend the court's judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. The basis for the Secretary's motion was his belief that the ALJ's decision was premised on an error of law. According to the Secretary, the ALJ should have undertaken a threshold inquiry as to whether Travis is the biological son of Mr. Patterson before addressing whether Travis should be deemed to be Mr. Patterson's child because of the latter's written acknowledgment under 42 U.S.C. Sec. 416(h)(3)(A)(i)(I). The Secretary argued this to be the proper statutory interpretation because the initial clause of section 416(h)(3) reads "[a]n applicant who is a son or daughter of a fully or currently insured individual...." 42 U.S.C. Sec. 416(h)(3).
 
 
 15
 The district court, recognizing that this proffered construction of the statute would impose a double burden on illegitimate children such as Travis, rejected the Secretary's interpretation as both redundant and inconsistent. Additionally, the district court opined that the Secretary's position was contrary to any common sense reading of the statute. That court accordingly denied the Secretary's Rule 59(e) motion and readopted its previous decision, holding that Travis was entitled to benefits on Mr. Patterson's wage earner account. The Pattersons appealed. The Secretary chose not to appeal the adverse ruling on his Rule 59(e) motion. Thus, the Secretary appears before us in this case in the anomalous position of an appellee urging acceptance of the appellant's position.
 
 
 16
 This case requires us to deal directly with an issue of statutory construction that has heretofore been addressed by this circuit only in dicta. In McMillian by McMillian v. Heckler, 759 F.2d 1147 (4th Cir.1985), another case of an alleged illegitimate child seeking to collect on the wage earner's account, the Secretary advanced the same argument as here. Briefly, that argument goes that 42 U.S.C. Sec. 416(h)(3) requires as an initial determination that the child was in fact the biological child of the wage earner. This is hinged on the prefatory language "An applicant who is the son or daughter of" in Sec. 416(h)(3). The inquiry would then shift to a determination of whether the child is "deemed" the son or daughter of the wage earner. In McMillian, this court indicated that, if called upon, it would probably reject the Secretary's sought for construction, noting it to be internally inconsistent and redundant. Id. at 1152, n. 2. This court, in McMillian, however, affirmed the Secretary without deciding the question.
 
 
 17
 The district court clearly relied upon the dictum in McMillian in resolving this case. Having the matter squarely before us now, we are convinced that the district court was correct. Accord, Vance v. Heckler, 757 F.2d 1324 (D.C.Cir.1985). In Vance, benefits were awarded under 42 U.S.C. Sec. 416(h)(3)(C)(i)(I) based solely upon a personal letter which acknowledged paternity. The court did not rest its decision upon biological evidence of actual paternity which the Secretary would here require to be proven at the outset. The applicable language of 42 U.S.C. Sec. 416(h)(3)(A)(i)(I), at issue here, is identical. Thus, we hold that the award of child's benefits to Travis Zachary White and the reduction of Mrs. Patterson's social security benefits were fully consistent with the applicable statutory framework as well as the evidence in the case.[1]
 
 
 18
 The judgment of the district court is accordingly
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 We note that Mr. Patterson's admission of paternity might well meet the state law standard required for proof of paternity for Virginia intestacy provisions. See Va.Code Sec. 64.1-5.2 (1980 Replacement Volume); Distefano v. Commonwealth, 201 Va. 23, 109 S.E.2d 497 (1959). If that be the case, the ALJ could have based his decision upon 42 U.S.C. Sec. 416(h)(2)(A). We must, however, affirm the ALJ's decision only upon the reasons he gave. S.E.C. v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943); Cunningham v. Harris, 658 F.2d 239, 244, n. 3 (4th Cir.1981)