Jeanette LUKE for Scott E.
LUKE, Appellant,

v.

Otis R. BOWEN, Secretary of Health
and Human Services of the United
States, Appellee.

No. 87–5394.

United States Court of Appeals,
Eighth Circuit.

Submitted May 12, 1988.

Decided Feb. 21, 1989.
Rehearing Denied April 13, 1989.

Karen A. Hattervig, Sioux Falls, S.D., for appellant.

Lucille G. Meis, Denver, Colo., for appellee.

Before HEANEY,* Circuit Judge, ROSS, Senior Circuit Judge, and HILL,** Senior U.S. District Judge.

ROSS, Senior Circuit Judge.

Appellant Jeanette Luke (Luke), on behalf of her minor son, Scott E. Luke, appeals the order of the district court[1] granting summary judgment in favor of the Sec-

---

* The HONORABLE GERALD W. HEANEY assumed senior status on January 1, 1989.

** The HONORABLE IRVING HILL, Senior United States District Judge for the Central District of California, sitting by designation.

1. The Honorable John B. Jones, United States District Court Judge for the District of South Dakota.

retary of Health and Human Services and affirming the Secretary's denial of Luke's application for surviving child's insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 402(d)(1). 666 F.Supp. 1340. The issue before this court is whether the Secretary's decision to deny benefits is supported by substantial evidence. Finding that it is, we affirm.

## I.

On July 2, 1985, Luke filed an application for surviving child's insurance benefits on behalf of her minor son, Scott E. Luke (Scott), on the earnings record of Gary J. Groth, the deceased wage earner and alleged biological father of Scott. On September 2, 1985, the claim was denied, and that decision was upheld upon reconsideration. Luke then requested and obtained a hearing before an Administrative Law Judge (ALJ) on May 20, 1986. On July 22, 1986, the ALJ rendered his decision finding that Scott was not eligible for benefits because Luke had failed to establish that Groth, the deceased wage earner, was Scott's biological father. The ALJ based his decision on evidence introduced at the hearing, which is summarized as follows:

Jeanette Luke lived with Gary Groth from July 1980 until she separated from him in May 1984. They were never married. Luke testified that she did not have sexual relations with anyone other than Groth during the period that she lived with him. She further testified that she did not use any birth control during that period because Groth had told her he had had a vasectomy. However, in December of 1980, Luke discovered that she was pregnant, and on August 29, 1981, she gave birth to her son, Scott, who is the claimant in this action.

Luke testified that after she became pregnant, she and Groth consulted with Dr. Irvin Kaufman to determine how, since Groth had had a vasectomy, she could have become pregnant. On January 31, 1981, Dr. Kaufman advised them that not all vasectomies are 100% effective. But when Dr. Kaufman tested Groth's semen specimen on February 9, 1981, he found no sperm in the specimen.

Notwithstanding the test results on Groth's semen specimen, Groth referred to Scott as his son and publicly held himself out to be Scott's father during the period that he (Groth) lived with Luke. Just one and one-half months after Scott's birth, on October 16, 1981, Groth, who was already receiving social security disability benefits, filed an application for child insurance benefits on behalf of Scott. That application was accompanied by a handwritten, signed statement in which Groth declared that Scott was his natural child.[2] Scott was later determined to be eligible to receive child's insurance benefits, but such benefits apparently were terminated or never initiated upon the Secretary's finding that Groth's disability had ceased. Groth reapplied for child's insurance benefits on December 6, 1982 on behalf of Scott,[3] but this claim was later denied on the basis that (1) Groth was not entitled to disability benefits, and (2) Scott failed to meet the relationship requirement of 42 U.S.C. § 402(d) because new evidence, i.e., the medical report of Dr. Irvin Kaufman, indicated that Groth was not capable of fathering Scott due to a prior surgery.

The record reveals that Scott's birth certificate, filed in the State of South Dakota, does not name a father. Luke reported that she did not list Groth as the father because she and Groth were not married and because Groth was out of town at the time of Scott's birth. Groth's name does

---

**2.** The record also reveals that on November 21, 1981, Groth filed an additional statement in which he claimed to be the natural father of Scott. This statement was submitted immediately after Groth's ex-wife, Barbara Groth, had submitted a letter of protest with respect to Groth's application for benefits for Scott. Scott's entitlement to benefits on the record of Groth would have reduced the amount of bene-

fits already being paid to Barbara Groth for the benefit of James Groth, the youngest of four sons born to Barbara and Groth during their marriage.

**3.** Groth's December 6, 1982 application also sought benefits for his other minor son, James Groth.

appear on Scott's hospital record of birth. Luke testified, however, that she placed Groth's name on that certificate after she returned home from the hospital.

After Luke separated from Groth in 1984, she received Aid for Dependent Children (AFDC). She also received VA pension benefits for Scott under Groth's name because the Veterans Administration had recognized Scott as Groth's child. Luke testified, however, that Groth later attempted to terminate Scott's VA benefits. The record also reflects that Groth indicated that he had no children under 18 years of age when Groth applied for disability insurance benefits on November 1, 1984.

Because Luke was receiving AFDC, the local department of social services initiated a paternity suit against Groth on Luke's behalf. Luke reported that a hearing in that case was set for June 10th or 11th, 1985, that Groth hired Gary Blue, an attorney, to contest the action, but that Groth did not appear for the hearing. Luke later learned that Groth had died on June 13, 1985. Shortly thereafter, on July 2, 1985, Luke filed the instant application for child's insurance benefits.

The ALJ specifically found that:

1. Scott Luke was not entitled to benefits as a legitimate or adopted child of Groth, because Groth never married Jeanette Luke nor adopted Scott under state law.

2. Scott Luke failed to establish that Groth was his biological father; that "there is clear and convincing evidence in the record that [Groth] could not have fathered [Scott] during the relevant time period."

3. Scott Luke was not entitled to benefits under 42 U.S.C. § 416(h)(2)(A), because under South Dakota Law, S.D. Codified Laws § 29–1–15, he could not inherit as the illegitimate child of Groth. "[T]he status of child [under the state statute] is primarily based on a biological relationship which requires that the individual acknowledging the child have had the capacity or opportunity to father the child."

4. Scott Luke was not entitled to benefits under 42 U.S.C. § 416(h)(3)(C)(i)(I), because Groth's written acknowledgment that Scott was his son was insufficient in light of evidence that Scott had no biological relationship to Groth.

Thereafter, on September 29, 1986, the Appeals Council denied Luke's request for review and the ALJ's decision became the final decision of the Secretary. Luke subsequently filed this action for review of the Secretary's decision in district court pursuant to 42 U.S.C. § 405(g). On cross motions for summary judgment, the district court affirmed the Secretary's decision to deny benefits. Specifically, the district court found that the ALJ correctly determined that in order for an illegitimate child to be eligible for benefits under either 42 U.S.C. § 416(h)(2)(A) or § 416(h)(3)(C)(i)(I) he must first establish a biological relationship to the wage earner. The district court also found that substantial evidence supported the conclusion that Groth was not Scott's biological father, and thus Scott was not eligible for benefits under either 42 U.S.C. § 416(h)(2)(A) or § 416(h)(3)(C)(i)(I). This appeal followed.

## II.

Luke argues that the district court erred by misinterpreting South Dakota intestacy law (S.D. Codified Laws § 29–1–15) and 42 U.S.C. § 416(h)(3)(C)(i)(I), and by finding that the Secretary's decision was supported by substantial evidence. Specifically, she argues that Scott, though illegitimate, should be deemed legitimate and entitled to receive benefits under 42 U.S.C. § 416(h)(2)(A) or § 416(h)(3)(C)(i)(I).

It is well established that where the Secretary has denied benefits, we must affirm the Secretary's decision if it is supported by substantial evidence on the record as a whole. See Sherrill for Sherrill v. Bowen, 835 F.2d 166, 168 (8th Cir. 1987); Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir.1987). "This deferential standard of review applies only to findings of fact, however, and 'no similar presumption of validity attaches to the Secretary's conclusions of law * * *.' " Smith v. Heckler,

707 F.2d 1284, 1285 (11th Cir.1983) (quoting *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982)) (referring to the Secretary's interpretation of state law). A federal district court's interpretation of state law, however, is given special weight and deferential review on appeal, and will not be reversed unless the appellate court is convinced that the district court has incorrectly ascertained or applied local law. *Hazen v. Pasley,* 768 F.2d 226, 228 (8th Cir.1985) (citations omitted).

The general criteria for entitlement to child's insurance benefits are found under 42 U.S.C. § 402(d)(1). Section 402(d)(1) provides that every "child" of an individual who dies fully or currently insured under the Act is entitled to child's insurance benefits if the child has applied for such benefits, is unmarried, under the age of 18, and was dependent upon the insured individual at the time of the insured's death. *Id.*

A child is *deemed dependent* if he was (1) living with or supported by the wage earner at the time of his death, or (2) is *the legitimate child* of the wage earner. 42 U.S.C. § 402(d)(3). If a child is *illegitimate,* he may nonetheless be *deemed legitimate* for purposes of the Act (and hence deemed dependent and thus entitled to benefits) if he can [establish]:

> 1) That the [child] would be entitled to inherit personal property from the deceased wage earner under the law that would be applied in determining the devolution of intestate personal property by the courts of the wage earner's state of domicile at death [under 42 U.S.C. § 416(h)(2)(A) ] [or]
>
> \*      \*      \*      \*      \*      \*
>
> 3) That the deceased wage earner had a) acknowledged the [child] claimant in writing as his or her son or daughter \* \* \* [under 42 U.S.C. § 416(h)(3)(C)(i)(I) ].

**4.** 42 U.S.C. § 416(h)(2)(A) provides in pertinent part:

> In determining whether an applicant is the child \* \* \* [of the insured individual under] this subchapter, the Secretary shall apply such

*Allen v. Califano,* 452 F.Supp. 205, 208 (D.Md.1978) (emphasis original) (footnotes omitted).

### A. Interpretation of South Dakota Law

■    Under section 416(h)(2)(A),[4] Scott would be entitled to benefits if he would inherit from Groth under the intestate laws of the state in which Groth was domiciled at his death. Although Groth apparently died in a Minnesota hospital, the ALJ found that Groth was domiciled in the State of South Dakota at the time of his death. Therefore, the relevant statute is S.D. Codified Laws § 29–1–15, which provides: "Every illegitimate child is an heir of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child \* \* \*."

The ALJ opined that:

> [Section 29–1–15] \* \* \* requires that the illegitimate first be the child of the father. One does not obtain the status of child merely by being acknowledged as such in writing. Rather, the status of child is primarily based on a biological relationship which requires that the individual acknowledging the child have had the capacity or opportunity to father the child.

The district court agreed with the ALJ's interpretation, citing *Application of G.K.,* 248 N.W.2d 380, 385 (S.D.1976) (Zastrow, J., dissenting) and *In re Oakley's Estate,* 149 Neb. 556, 31 N.W.2d 557 (1948), as support.

Luke asserts that the ALJ's and district court's interpretation of section 29–1–15 is erroneous, because the statute explicitly uses the terms "person," not "natural father" or "father," and "child," not "natural child" or "biological child." She also notes that under South Dakota law, S.D. Codified Laws § 25–8–49, an admission or acknowledgment by an alleged father of paternity of an illegitimate child is prima facie evidence of paternity. She thus argues that because Groth unequivocally acknowledged

law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time \* \* \* of his death \* \* \*.

Scott to be his child, Scott would have been entitled to inherit from Groth, and now is entitled to benefits under 42 U.S.C. § 416(h)(2)(A).

While the terms of section 29–1–15 do not make an explicit reference requiring that there be a biological relationship between the child and the person acknowledging paternity, we find that such a requirement is reasonably implied under the statute. Such an interpretation is consistent with Justice Zastrow's dissenting opinion in *Application of G.K., supra,* 248 N.W.2d at 385, albeit dicta, in which he made reference to the rights of "natural" parents with respect to their illegitimate children under South Dakota law, e.g., the right of a "natural father" to secure his illegitimate child's right to inherit upon the father's written acknowledgment of paternity under S.D. Codified Laws § 29–1–15. The ALJ's interpretation is also consistent with S.D. Codified Laws § 25–8–49, which provides that an admission of paternity by an alleged father is prima facie evidence of paternity.[5] Acknowledgment of paternity under this statute will suffice, in most cases, to establish an illegitimate child's right to inherit under section 29–1–15. But where, as here, the alleged father's acknowledgment of paternity is rebutted by clear and convincing evidence that he was incapable of fathering the child, the father's acknowledgment alone is insufficient to confer the status of "child" for inheritance purposes. We therefore conclude

that the district court and ALJ did not err in interpreting South Dakota law, section 29–1–15.

### B. *Interpretation of 42 U.S.C. § 416(h)(3)(C)(i)(I)*

■ Next we address the issue of whether section 416(h)(3)(C)(i)(I) of Title 42 [6] requires the claimant to establish a biological relationship to the wage earner. Both the ALJ and the district court concluded that it does. The district court based its conclusion on (1) the definition of "child" found within 42 U.S.C. § 416(e), (2) the language of 42 U.S.C. § 416(h)(3)(C)(i)(I) requiring that the applicant be the "son or daughter" of the wage earner, *Pray v. Department of Health, Education and Welfare,* 1999–81 Unempl. Ins. Rep. (CCH) ¶ 16,665 (S.D. N.Y. Mar. 21, 1979), (3) 20 C.F.R. § 404.355,[7] which specifically provides that the claimant must be the insured's "natural child," and (4) the legislative history of 42 U.S.C. § 416(h)(3). *See* Social Security Amendments of 1965, S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S. Code Cong. & Admin. News 1943, 2049–50; *see also Pray, supra,* 1999–81 Unempl. Ins. Rep. (CCH) at ¶ 16,666.

We find that the district court correctly determined that 42 U.S.C. § 416(h)(3)(C)(i)(I) requires the claimant to establish that he is the biological child of the wage earner. This court has previously recognized that proof of a biological relationship is a necessary antecedent re-

---

**5.** S.D. Codified Laws § 25–8–49, in effect creates a presumption of paternity upon the father's acknowledgment or admission of paternity. The requisite burden of proof for overcoming this presumption, as implicitly recognized by the ALJ, is clear and convincing evidence. *See Matter of F.J.F.,* 312 N.W.2d 718, 721 (S.D.1981)

**6.** 42 U.S.C. § 416(h)(3)(C)(i)(I) provides in relevant part:

An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under [state intestacy laws pursuant to § 416(h)(2)], shall nevertheless be deemed to be the child of such insured individual if:

\*   \*   \*   \*   \*   \*

(C) in the case of a deceased individual—
(i) such insured individual—

(I) had acknowledged in writing that the applicant is his or her son or daughter

\*   \*   \*   \*   \*   \*

and such acknowledgment \* \* \* was made before the death of such insured individual \* \* \*.

**7.** 20 C.F.R. § 404.355, which interprets 42 U.S.C. § 416(h)(3)(C)(i)(I), provides in relevant part:

You may be eligible for benefits as the insured's natural child if one of the following conditions is met:

\*   \*   \*   \*   \*   \*

(c) *You are the insured's natural child* and your mother or father has not married the insured, but the insured has either acknowledged in writing that you are his or her child \* \* \*.

(Emphasis added.)

quirement under § 416(h)(3)(C)(ii). *See Sherrill for Sherrill v. Bowen, supra,* 835 F.2d at 169; *Jones for Carr v. Bowen,* 829 F.2d 647 (8th Cir.1987). *Accord Imani ex rel. Hayes v. Heckler,* 797 F.2d 508, 512 (7th Cir.), *cert. denied,* 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986); *Greer by Greer v. Heckler,* 756 F.2d 794, 798 (10th Cir.1985). Section 416(h)(3)(C)(ii) is simply an alternative entitlement provision of § 416(h)(3)(C)(i), at issue in the present case. We agree with the conclusion reached by the Fourth Circuit in *McMillian by McMillian v. Heckler,* 759 F.2d 1147, 1153 (4th Cir.1985), that:

> [I]t is clear that Congress intended that a claimant invoking either of the alternative means of establishing entitlement provided by § 416(h)(3)(C) should be put to proving as one ultimate fact that the insured was his natural parent. * * * [P]arentage of the insured is an ultimate fact to be proven under either subparagraph (C)(i) or (C)(ii).

### C. *Review of the Evidence*

■ Having determined that both 42 U.S.C. § 416(h)(3)(C)(i)(I) and § 416(h)(2)(A) (by virtue of the South Dakota intestate statute, § 29–1–15) required the claimant to establish a biological relationship to the insured wage earner, we now consider whether the Secretary's finding that there was no biological relationship between Scott and Groth is supported by substantial evidence on the record as a whole. This standard of review requires that we take into account evidence which fairly detracts from its weight. *Piercy v. Bowen,* 835 F.2d 190, 191 (8th Cir.1987).

Luke asserts that the ALJ erred by giving greater weight to unreliable evidence of non-paternity (i.e., sterilization by vasectomy) than to more reliable evidence of paternity (i.e., Groth's written and public statements acknowledging Scott as his son, Groth's attempts to obtain child insurance benefits for Scott, Groth's tolerance of VA pension payments to Luke for Scott's benefit after Luke separated from Groth, Scott's physical resemblance to Groth). She argues that evidence of Groth's vasectomy should have been given little weight because there was evidence that vasectomies are not always successful in preventing pregnancy, the date of Groth's vasectomy could not be confirmed,[8] there was no evidence verifying the identification or condition of the semen sample tested by Dr. Kaufman, and a second semen sample was never tested to confirm the results of the first semen test.

Having carefully considered the record, we find that the ALJ did not err by giving greater weight to that evidence tending to prove non-paternity than to the evidence tending to prove paternity. The record indicates that Groth repeatedly admitted having had a vasectomy in 1970 or 1971, that the vasectomy was performed at Crystal Medical Clinics, Crystal, Minnesota, that vasectomies are successful in 399 out of 400 cases (or 99.75 percent of the time), and that Groth's treating physician, Dr. Kaufman, found no live or dead sperm in Groth's semen sample just a couple of months after Luke became pregnant. We find this evidence was substantial and clearly outweighed any declarations or belief Groth may have had that he was Scott's father. We also find that the evidence of Groth's vasectomy and semen test results was sufficiently reliable to be considered material on the issue of paternity.[9]

Furthermore, we cannot say that the record supports Luke's claim that Groth's acknowledgment of Scott was unequivocal. Six months following Luke's separation from Groth, Groth indicated on an application for disability benefits that he had no children under the age of 18. The record also indicates that Groth did not make regular child support payments, because the local department of social services had to

---

**8.** The record indicates that the medical records of Groth's vasectomy were destroyed in a medical clinic fire.

**9.** In *Sherrill for Sherill v. Bowen,* 835 F.2d 166, 169 (8th Cir.1987), we recognized that as long as the evidence is material to the issues in question, it may be considered by the ALJ, although such evidence would otherwise be held inadmissible under the rules of evidence in a court of law.

initiate a paternity suit against Groth on Luke's behalf in order to secure child support. Although Groth did not appear nor file an answer in that proceeding, Luke testified that Groth had hired an attorney, Gary Blue, to contest paternity in that action. Finally we note Luke's testimony indicating that sometime after she had separated from Groth, Groth attempted to terminate the VA pension benefits which were being paid to Luke on Scott's behalf. These facts, we believe, substantially support the ALJ's conclusion that despite Groth's written acknowledgment of Scott, he (Groth) also had some misgivings about his biological relationship to Scott. We also agree that it was to Groth's advantage for him to acknowledge Scott as his child in order to receive additional benefits from both the Secretary and the Veterans Administration at the time he was living with Luke.

Based upon the foregoing considerations, we conclude that there is substantial evidence on the record as a whole to support the Secretary's decision to deny Luke's application for surviving child's insurance benefits. Accordingly, we affirm the district court's entry of summary judgment in favor of the Secretary.

HEANEY, Circuit Judge, dissenting.

The majority addresses the broad issue of whether a claimant seeking surviving children's benefits must establish that he or she is the biological child of an insured wage earner without answering the more precise issue—whether 42 U.S.C. § 416(h)(3)(C)(i)(I) requires this claimant to prove paternity *in addition* to producing a written acknowledgment of paternity from the deceased wage earner. The majority accepts the Secretary's interpretation of this statutory provision, yet fails to adequately support its legal conclusion. I believe the Secretary's reading of section 416(h)(3)(C) is illogical, and frustrates the purpose underlying this statutory scheme. A more rational reading of the statute, consistent with the purpose of the Social Security Act, is this: if a claimant has a valid written acknowledgment of parentage, this evidence constitutes a statutory

presumption of legitimacy for the purpose of the surviving children's benefits provisions. A careful review of the record clearly shows that the Secretary cannot conclusively prove that Scott Luke is not the biological child of Gary Groth. As we are required to liberally construe the Social Security Act and to award benefits in marginal cases, I believe Scott should receive social security benefits. For these reasons, I respectfully dissent from part II. B. of the majority's opinion.

A. Threshold Requirement of Parentage:

The entitlement provision involved in this case provides benefits to every child who survives a fully insured individual if that child was dependent on the individual at the time of his or her death. 42 U.S.C. § 402(d). Under section 416(h)(3)(C), an "applicant who is the son or daughter of a fully and currently insured individual" will be deemed to be that individual's child for eligibility purposes if:

(1) the individual "acknowledged in writing that the applicant is his or her son or daughter" before dying, subpara. (C)(i)(I);

(2) the individual had been declared by a court to be the parent, subpara. (C)(i)(II);

(3) the individual had been ordered by a court to support the applicant on the basis of parentage, subpara. (C)(i)(III); or

(4) the individual shows "by evidence satisfactory to the Secretary" that he or she is the claimant's parent and the individual was living with or contributing to the support of the claimant at the time of death, subpara. (C)(ii).

The Secretary contends that the introductory language in paragraph (3), i.e., that the applicant is the son or daughter of an insured individual, creates a threshold question of whether the claimant is the biological child of the insured individual. According to the Secretary, if the claimant cannot prove this biological relationship, then written acknowledgments and court

orders as to parentage are irrelevant. The district court agreed with this reading.

The majority approves the district court's interpretation of section 416(h)(3)(C), citing the language of section 416(e), 416(h)(3)(C)(i)(I), 20 C.F.R. § 404.355, and the legislative history of 42 U.S.C. § 416(h)(3) as support. First, section 416(e) merely defines "child" as the "child or legally adopted child of an individual." 42 U.S.C. § 426(e)(1). It sheds no light on the necessity of proving biological paternity in addition to proving a written acknowledgment of paternity.

Second, the Secretary's regulation, 20 C.F.R. § 404.355, states that the claimant must be the natural child of the insured wage earner to be eligible for benefits under 416(h)(3)(C)(i), but it too fails to indicate how that relationship is to be proven. Furthermore, we need not accept the Secretary's interpretation of the statutory provision or of its regulation if it conflicts with a logical reading of the statute. *Mathews v. Lucas,* 427 U.S. 495, 507 n. 14, 96 S.Ct. 2755, 2763, n. 14, 49 L.Ed.2d 651 (1976). *See also Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission,* 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968) (construction of a statute by agency charged with its administration entitled to deference only if it has reasonable basis in law).

Third, the legislative history, found so helpful by the district court, provides:

> The committee has therefore included in the bill a provision under which benefits would be paid to a child on the earnings record of his father, even though the child cannot inherit the father's intestate property, if the father had acknowledged the child in writing, had been ordered by a court to contribute to the child's support, had been judicially decreed to be the child's father, or is shown by other evidence satisfactory to the Secretary of Health, Education and Welfare to be the child's father and was living with or contributing to the support to the child. S.Rep. No. 404, 89th Cong., 1st Sess., [1965] U.S. Code Cong. & Admin. News 1943, 2050.

This language hardly establishes that proof of biological parentage and a written acknowledgment of parentage are both required under the statute. In my view, this passage merely describes the effect of the amendment, and does not enunciate the two-part test being advanced by the Secretary.

As section 416(e), 20 C.F.R. § 404.355 and the legislative history really provide no guidance for this Court, I believe the question becomes whether the Secretary's reading of this section is logical, whether it is consistent with the statutory mandate, and whether it furthers the policy underlying the statute. I believe the majority adopts an interpretation of 416(h)(3)(C) which is illogical and inconsistent.

It is illogical to assume that Congress would require, under subparagraph (C)(i)(I), that a claimant prove biological parentage through medical evidence *in addition to* providing an acknowledgment in writing to certify this very issue. If we accept the Secretary's reading of paragraph (3)(C)(i), as the majority has done, we essentially require a claimant to prove parentage "by evidence satisfactory to the Secretary" in all cases, including those in which a claimant can prove parentage by documentation. The provisions of subparagraph (C)(i) thus become meaningless.

The majority cites several cases in which several circuits, including this one, have acknowledged that proof of a biological relationship is a necessary antecedent requirement under section 416(h)(3)(C)(ii). Of course, the language of that provision directly supports such an interpretation, as it provides that a claimant will be eligible for benefit if *"such insured individual is shown by evidence satisfactory to the Secretary to be the mother or father of the applicant."* This language is not replicated in section 416(h)(3)(C)(i). We should not insert this requirement into subparagraph (C)(i) as a threshold requirement when to do so would nullify its effect.

The majority relies on language in *McMillian by McMillian v. Heckler,* 759 F.2d 1147, 1153 (4th Cir.1985) for the proposition that biological parentage is an ulti-

mate fact to be proven under either subparagraph (C)(i) or (C)(ii). Yet, the Fourth Circuit recognized, in dicta, that the Secretary's asserted interpretation was illogical. It stated:

We admit, but need not in this case authoritatively accept, the force of claimant's contention that in logic § 416(h)(3)(C) should not be construed to impose on claimants invoking either subparagraph (C)(i) or (C)(ii) any further independent requirement of proving biological parenting, i.e., that the requirements for establishing deemed dependent child status are fully stated within the two subparagraphs as free-standing, independent alternatives. 759 F.2d at 1151 (footnote omitted).

The Fourth Circuit has recently examined this interpretation again in *Patterson v. Bowen*, 839 F.2d 221 (4th Cir.1988) in which it stated:

In *McMillian*, this court indicated that, if called upon, it would probably reject the Secretary's sought for construction, noting it to be internally inconsistent and redundant. *Id.* at 1152, n. 2. This court, in *McMillian*, however, affirmed the Secretary without deciding the question.

* * * Having the matter squarely before us now, we are convinced that the district court was correct [in rejecting the Secretary's threshold requirement]. Accord, *Vance v. Heckler*, 757 F.2d 1324 (D.C.Cir.1985). In *Vance*, benefits were awarded under 42 U.S.C. § 416(h)(3)(C)(i)(I) based *solely* upon a personal letter which acknowledged paternity. The court did not rest its decision upon biological evidence of actual paternity which the Secretary would here require to be proven at the outset. 839 F.2d at 224 (emphasis added).

Thus, while acknowledging that parentage is an ultimate fact to be proven by the claimant, the Fourth Circuit held in *Patterson* that a claimant makes this showing by producing an acknowledged writing or a court order of parentage. No additional threshold showing of biological parentage is required.

Based on the Fourth Circuit's analysis in *Patterson* and *McMillian*, and the illogical results of the Secretary's reading of paragraph (3)(C), I believe that the majority errs in finding that proof of a biological relationship of parentage is a "necessary antecedent requirement" under section 416(h)(3)(C)(i).

B. Statutory Presumption of Parentage:

Contrary to the position of the Secretary, the case law interpreting the surviving children's benefits provisions appears to support the conclusion that if a written acknowledgment of paternity exists, as in this case, the claimant is to be statutorily presumed eligible for social security benefits.

Prior to 1965, an illegitimate child was denied surviving children's benefits unless he or she could, under applicable state law, inherit intestate personal property from his father. S.Rep. No. 404, 89th Cong., 1st Sess., [1965] U.S.Code Cong. & Admin. News 1943, 2049. Unsatisfied with the inconsistent results of such a statutory scheme, Congress amended the Social Security Act to allow an illegitimate child to receive benefits "if the father had acknowledged the child in writing, had been ordered by a court to contribute to the child's support, had been judicially decreed to be the child's father, or is shown by other evidence satisfactory to the Secretary of Health, Education and Welfare to be the child's father and was living with or contributing to the support of the child." *Id.* at 2050.

The United States Supreme Court has interpreted this amendment as a method of relieving a child of the burden of showing individualized proof of legitimacy and dependency. *Mathews v. Lucas*, 427 U.S. 495, 498, 96 S.Ct. 2755, 2758, 49 L.Ed.2d 651 (1976). In *Mathews*, the Supreme Court wrote:

Congress' purpose in adopting the statutory presumptions of dependency [of section 416(h)(3)(C)] was obviously to serve administrative convenience. While Congress was unwilling to assume that

every child of a deceased insured was dependent at the time of death, by presuming dependency on the basis of relatively readily documented facts, such as legitimate birth, or existence of a support order or paternity decree, which could be relied upon to indicate the likelihood of continued actual dependency, Congress was able to avoid the burden and expense of specific case-by-case determination in the large number of cases where dependency is objectively probable. 427 U.S. at 509, 96 S.Ct. at 2764. Thus, according to the Supreme Court, subparagraphs (C)(i) and (C)(ii) codify administrative "short-cuts" to proving the dependency of illegitimate children.

Subparagraphs (C)(i) and (C)(ii) must also codify a method of proving legitimacy. Section 416(h)(3) provides that, if the conditions of subparagraphs (C)(i) or (C)(ii) are met, the claimant will be "deemed to be the child" of the insured individual. Under 42 U.S.C. § 402(d)(3), a child "deemed to be a child of a[n] * * * insured individual pursuant to * * * section 416(h)(3) of this title shall be deemed to be the legitimate child of such individual." It is apparent from the reading of these two provisions, and the Supreme Court's interpretation of 416(h)(3)(C), that a claimant who provides a written acknowledgment of paternity from an insured individual is to be presumed the legitimate and dependent child of that individual.

In the present case, Groth claimed in a 1981 claim for social security disability benefits and acknowledged in a notarized writing that he was Scott's natural father. The Social Security Administration (SSA) awarded benefits to Scott, rejecting Groth's ex-wife's claim that Groth could not have fathered the child. After the SSA terminated Groth's disability benefits in 1982, Groth applied for social security benefits for his children, James and Scott. Benefits were denied, not because Scott was not the biological son of Groth, but because Groth himself did not qualify for these benefits. In March 1983, Groth applied a third time for social security benefits for Scott. Once again, Groth certified to the SSA that Scott was his natural child. I believe that Scott,

who provided the Secretary with several written acknowledgments of paternity from Groth, is entitled to a statutory presumption that he is Groth's legitimate child.

This presumption is further supported by the fact that Groth lived with Scott for three years. Groth held himself out as Scott's father to friends and family, and supported Scott with his Veterans Administration Pension. Jeanette Luke provided the SSA with all of Groth's written acknowledgments, in addition to letters from Groth's attorney, David Buechler, and family friends Jeanne DeBelts and Joyce Van Loh, who stated that Groth had told them that Scott was his natural child. The Freeman Community Hospital birth certificate lists Groth as Scott's father. The Veterans Administration continues to recognize Scott as Groth's child.

The factual problem in the present case is that Groth was allegedly physically unable to father children at the time Scott was born. Although not proven conclusively, the Secretary and the majority focus on this fact and reject the numerous written statements made by Groth as "self-serving." Although this case raises the question of whether the statutory presumption afforded by section 416(h)(3)(C) is irrebuttable, I need not reach that issue as the Secretary has provided us with no conclusive medical evidence to support the allegation that Groth could not father children and to rebut the presumption of parentage. The records of the Crystal Medical Clinic, where Groth allegedly had a vasectomy, were destroyed by fire in 1981 and the doctor who allegedly performed the surgery is now deceased. Thus, there is no way to document that the vasectomy ever occurred. The only evidence supporting the Secretary's decision is the fact that Dr. Kaufman's semen test of Groth after Jeanette became pregnant contained no sperm. Although such a test indicates that Groth may not have fathered Scott, it does not conclusively disprove a biological relationship. I am not convinced that Scott's claim for surviving children's benefits is completely without merit.

The purpose of the children's benefits provisions is to provide support for all children of deceased insureds who can demonstrate their need in terms of dependency at the time of the insured's death. This protection extends to all children who have lost either the actual support of an insured parent or the anticipated support which that parent would have expected to furnish had his death not intervened. *See Jimenez v. Weinberger*, 417 U.S. 628, 634, 94 S.Ct. 2496, 2500, 41 L.Ed.2d 363 (1974); *Suarez v. Secretary of Health & Human Services*, 755 F.2d 1, 3 (1st Cir.), *cert denied*, 474 U.S. 844, 106 S.Ct. 133, 88 L.Ed.2d 109 (1985); *Parsons for Bryant v. Health and Human Services*, 762 F.2d 1188, 1190 (4th Cir.1985). As remedial legislation, enacted as a national insurance program, the Social Security Act, particularly those provisions relating to children, is to be accorded a liberal application in consonance with its humanitarian aims. *See Doran v. Schweiker*, 681 F.2d 605, 607 (9th Cir.1982) (liberal construction of requirement that father contribute to the support of an unborn illegitimate child); *Eisenhauer v. Mathews*, 535 F.2d 681, 686 (2d Cir.1976) (liberal interpretation of provisions for stepchildren); *Holmes v. Weinberger*, 423 F.Supp. 149, 154 (E.D.N.Y.1976) (liberal construction of terms in 42 U.S.C. § 402). A court is not to interpret the act so as to withhold benefits in marginal cases. *Smith v. Heckler*, 820 F.2d 1093, 1095 (9th Cir.1987); *Adams v. Weinberger*, 521 F.2d 656, 659 (2d Cir.1975).

The Secretary has maintained that much deference should be given to its decision to deny benefits. As it argued in *Jimenez*, such deference to the agency "is necessary to prevent spurious claims because '[t]o the unscrupulous person, all that prevents him from realizing ... gain is the mere formality of a spurious acknowledgment of paternity or a collusive paternity suit with the mother of an illegitimate child who is herself desirous or in need of the additional cash.'" 417 U.S. at 635, 94 S.Ct. at 2501. Yet, we need not defer to an illogical interpretation of the statute. Nor need we deny benefits in marginal cases merely because the Secretary fears "spurious claims." *See NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965) (courts need not rubber-stamp administrative decisions that are inconsistent with statutory mandate or that frustrate policy underlying statute). There has been absolutely no evidence presented in this case that would indicate that Groth acknowledged Scott as his son merely for his personal gain. Similarly, there has been no evidence of collusion or fraud on the part of Groth and Jeanette Luke. The desire to protect the social security trust fund from spurious claims should not override the mandate to award children's benefits in close cases. Even if, in fact, Groth was not Scott's father, we should not deny benefits unless the lack of a biological relationship can be conclusively proven. If the child has a valid written acknowledgment of parentage, and the Secretary cannot rebut the statutory presumption of legitimacy, that child should receive the financial protection of social security benefits.